## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| DEMI KOSTKA , *et al.*, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>           v.<br><br>DICKEY'S BARBECUE RESTAURANTS, INC., *et al.*,<br><br>      Defendants. | No. 3:20-cv-3424-K<br><br>Hon. Ed Kinkeade<br><br>  **Consolidated with:**<br><br>Civil Action No. 3:20-cv-3603-K<br>Civil Action No. 3:21-cv-0137-K<br>Civil Action No. 3:21-cv-0769-K |

## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFFS' BRIEF IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.    FACTUAL AND PROCEDURAL BACKGROUND ........................................................2

    A.  Factual Background ........................................................................................2

    B.  Procedural History ........................................................................................2

    C.  Settlement Negotiations ................................................................................3

II.    THE SETTLEMENT .......................................................................................................4

    A.  The Settlement Class ....................................................................................4

    B.  The Settlement Relief ...................................................................................5

        1.  Reimbursement of Out-of-Pocket Losses .................................................5

        2.  Cash Option ...............................................................................................6

        3.  Credit Monitoring Services ........................................................................6

    C.  Business Practices Changes ...........................................................................6

    D.  Notice to the Class and Settlement Administration ........................................7

    E.  Attorneys' Fees, Costs, and Expenses and Representative Plaintiff Service Awards ...7

III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL .........................................7

    A.  Legal Standard and Six-Factor Test ...............................................................7

    B.  The Settlement Satisfies the Standards for Preliminary Approval ................................9

        1.  The Settlement Class Is Adequately Represented ....................................9

        2.  The Settlement is the Result of Arm's Length Negotiations and There is No Fraud or Collusion ..................................................................................12

        3.  The Settlement Benefits Being Made Available to the Settlement Class Members are Excellent in Comparison to the Range of Possible Recovery and Considering the Plaintiffs' Likelihood of Success on the Merits ...............................13

        4.  The Proposed Method of Distributing Relief Supports Preliminary Approval of the Settlement ..............................................................................................15

5.  The Terms of the Proposed Award of Attorneys' Fees, Costs, and Expenses Supports Preliminary Approval of the Settlement ..................................................16

6.  The Settling Parties' Agreements ........................................................................17

7.  The Settlement Treats Settlement Class Members Equitably...............................17

8.  The Stage of the Proceedings and the Amount of Discovery Completed.............18

9.  The Opinion of Experienced Class Counsel ........................................................18

IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED ....................................................19

A.  Rule 23(a) Requirements Are Satisfied ........................................................................19

1.  The Settlement Class Is Numerous .....................................................................20

2.  There Are Common Questions of Law and Fact ..................................................20

3.  The Proposed Representative Plaintiffs' Claims Are Typical...............................21

4.  The Proposed Representative Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class ......................................21

B.  The Requirements of Rule 23(b)(3) Are Satisfied ........................................................22

1.  Common Questions Predominate .........................................................................22

2.  Class Treatment Is Superior to Other Forms of Adjudication ..............................23

V.  THE CLASS NOTICE PROGRAM SHOULD BE PRELIMINARILY APPROVED ....24

VI.  CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591(1997) ................................................................................. 19, 22-24

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...............................................................14

*Bywaters v. United States*,
 196 F.R.D. 458 (E.D. Tex. 2000)......................................................................21

*Collins v. Sanderson Farms, Inc.*,
 568 F. Supp. 2d 714 (E.D. La. 2008)................................................................13

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) ........................................................................7, 18

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ..........................................................................18

*DeHoyos v. Allstate Corp.*,
 240 F.R.D. 269, 291-92 (W.D. Tex. 2007)........................................................15

*Feder v. Elec. Data Sys. Corp.*,
 429 F.3d 125, 129-130 (5th Cir. 2005) ..............................................................21

*Garza v. Sporting Goods Props.*,
 No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) ..............14

*Grant v. Capital Mgmt. Servs., L.P.*,
 No. 10-CV-WQH BGS, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5,
 2014) ..................................................................................................................15

*Jones v. Singing River Health Servs. Found.*,
 865 F.3d 285 (5th Cir. 2017) ............................................................................13

*Kemp v. Tower Loan of Miss., LLC*,
 No. 3:15-CV-499-CWR-LRA, 2017 U.S. Dist. LEXIS 209085 (S.D. Miss.
 Dec. 20, 2017)....................................................................................................13

*Klein v. O'Neal, Inc.*,
 705 F. Supp. 2d 632 (N.D. Tex. 2010) .........................................................12, 13

*Lucas v. Kmart Corp.*,
 234 F.R.D. 688 (D. Colo. 2006) ........................................................................12

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ......................................................7

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002).............................................8, 19

*Morrow v. Washington*,
    277 F.R.D. 172 (E.D. Tex. 2011)..............................................21

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ..............................................20, 21

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    910 F. Supp. 2d 891 (E.D. La. 2012) .........................................23

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2nd Cir. 1998)...................................................7

*Parker v. Anderson*,
    667 F.2d 1204 (5th Cir. 1982) .................................................14

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992).................................................24

*Reed v. General Motors Corp.*,
    703 Fed.2d 170 (5th Cir. 1983)..................................................8

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993)..................................................9

*Telles v. Midland Coll.*,
    No. MO:17-CV-00083-DC, 2018 U.S. Dist. LEXIS 227812 (W.D. Tex. Apr.
    30, 2018) ..........................................................................19

*Twigg v. Sears, Roebuck & Co.*,
    153 F.3d 1222 (11th Cir. 1998) ...............................................24

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007)..................................... 21-23

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...........................................................20

*Walton v. Franklin Collection Agency*,
    190 F.R.D. 404 (N.D. Miss. 2000) ............................................20

## <u>STATUTES</u>

Cal. Civ. Code § 1798.100, *et seq*..................................................................................6

## <u>OTHER AUTHORITIES</u>

Fed. R. Civ. P. 1...................................................................................................18

Fed. R. Civ. P. 23(a) ..................................................................................... 19-21

Fed. R. Civ. P. 23(b)(3) ................................................................................. 22-24

Fed. R. Civ. P. 23(e)(1).............................................................................8, 19, 24

Fed. R. Civ. P. 23(e)(2)...................................................................................8, 16

Plaintiffs Demi Kostka, Vincent Jear, Latorsha Adams, Robert Stroman, Veronica Snyder, and Lashawn Parker ("Plaintiffs") submit this brief in support of their Motion for Preliminary Approval of Class Action Settlement with Defendants Dickey's Barbeque Restaurants, Inc. and Dickey's Capital Group (collectively "Dickey's" or "Defendants").

After hard-fought negotiations, the parties reached the settlement agreement (the "Settlement" or "SA") attached as Exhibit 1. The Settlement is tailored to the facts of this litigation and designed to provide timely and significant benefits to Settlement Class Members. The Settlement compares favorably to settlements in similar data breach litigation and was reached after intensive arm's length negotiations before a skilled mediator. As shown herein, the Settlement readily satisfies the preliminary approval standard of being fair, reasonable, and adequate; the comprehensive Notice Plan is the best practicable means of providing notice under the circumstances; and the Settlement Class is likely to be certified for Settlement purposes at the final approval stage. Accordingly, Plaintiffs respectfully request that the Court enter an order: 1) certifying the proposed class for settlement purposes; 2) preliminarily approving the Settlement; 3) appointing Co-Lead Class Counsel Ben Barnow, Barnow and Associates, P.C.; Benjamin F. Johns, Chimicles Schwartz Kriner & Donaldson-Smith LLP; and John A. Yanchunis, Morgan & Morgan Complex Litigation Group; appointing Additional Class Counsel consistent with the proposed Preliminary Approval Order (filed herewith); 4) appointing Plaintiffs as Representative Plaintiffs; 5) appointing Epiq as the Settlement Administrator; 6) approving the proposed Notice Plan; and 7) setting a Fairness hearing for final approval of the Settlement and to consider any application for attorneys' fees, service awards, and reimbursement of costs, and expenses. Dickey's does not oppose the relief sought in this motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

Dickey's is a franchisor of a chain of barbeque restaurants located throughout the United States. Plaintiffs are consumers whose private and confidential financial information consisting of credit and debit card numbers, expiration dates, cardholder names, internal card verification codes, and other payment card information (collectively, "Card Information") was compromised in a security breach of Dickey's computer servers and payment card environment commencing on or around April 23, 2019, and continuing through approximately October 29, 2020 (the "Security Incident").

### B.     Procedural History

On November 16, 2020, Plaintiff Demi Kostka filed a class action complaint against Dickey's in this Court. On December 4, 2020, Plaintiffs Demi Kostka and Vincent Jear filed an Amended Complaint on behalf of a nationwide Class and California and Florida Sub-Classes, asserting claims for Negligence, Negligence *Per Se*, Breach of Implied Contract, Violations of the California Consumer Privacy Act of 2018 (the "CCPA"), California Unfair Competition Law (the "UCL"), and Unjust Enrichment.

On December 3, 2020, Latorsha Adams filed a complaint in the Dallas County Court, which was removed to the Northern District of Texas on December 9, 2020. No. 3:20-cv-3603-K (N.D. Tex.) (hereinafter, "*Adams*"). *Adams* asserted similar class action claims as the *Kostka* Plaintiffs. On January 20, 2021, *Jeary* was filed in this Court. No. 3:21-cv-0137-L (N.D. Tex.) (hereinafter "*Jeary*"). On March 8, 2021, Dickey's filed a motion to dismiss the *Adams* complaint, followed by motions to dismiss the *Kostka* and *Jeary* complaints on March 23, 2021. A fourth case, *Stroman*, was transferred to this Court from the Central District of California. No. 3:21-cv-

0769-K (N.D. Tex.). On March 12, 2021, Plaintiffs filed a Motion to Consolidate Cases and to Appoint Counsel. ECF No. 36. The four cases pending in this Court have been consolidated. ECF Nos. 37 and 54. Two additional cases are currently pending in United States District Court for the Southern District of California. *See Diczhazy v. Dickeys*, No. 3:20-cv-02189 L (MDD) (S.D. Cal.), *Marhefka v. Dickey's Barbecue Restaurants, Inc.*, 21-cv-00585-L-MDD (S.D. Cal.).

On November 20, 2020, Plaintiffs in the *Diczhazy* action moved under 28 U.S.C. § 1407 to centralize this litigation in the Southern District of California. Plaintiffs in the *Kostka* action and Dickey's opposed the motion. The Judicial Panel on Multidistrict Litigation denied the motion to centralize the actions on the basis that the feasibility of voluntary cooperation and coordination among the parties eliminated the need for centralization. *In re Dickey's Barbeque Restaurant, Inc. Consumer Data Security Breach Litigation*, MDL No. 2983, ECF No. 36.

### C.      Settlement Negotiations

The Settlement is the result of the voluntary and informal coordination of counsel representing plaintiffs in three of the six actions pending against Dickey's: counsel for *Kostka*, *Adams*, and *Stroman.* The lawyers in these cases worked together to negotiate an excellent settlement on behalf of the proposed class.

All negotiations regarding settlement in this case have been conducted at arm's length, in good faith, and free of any collusion. *See* Declaration of Benjamin F. Johns ("Johns Decl.") ¶ 10, attached as Exhibit 3, Declaration of Ben Barnow ("Barnow Decl.") ¶ 11, attached as Exhibit 2, Declaration of John A. Yanchunis ("Yanchunis Decl.") ¶ 13, attached as Exhibit 3.

After consolidation and the filing of Defendants' Motions to Dismiss in *Adams*, counsel for Plaintiffs filing this motion (i.e., in *Kostka*, *Adams*, and *Stroman*) and counsel for Defendants commenced discussions regarding the possibility of reaching a negotiated settlement on behalf of

Plaintiffs and the Settlement Class. After informal discussions, the parties agreed to enlist the aid of a private mediator to continue settlement negotiations. The parties exchanged factual information necessary to meaningfully explore the possibility of settlement and submitted mediation statements to the mediator describing their respective positions. Barnow Decl. ¶ 9.

On June 30, 2021, the parties engaged in a full-day mediation session with private mediator the Honorable United States District Judge Wayne Andersen (Ret.) via video conference. *Id.* ¶ 10. Judge Andersen (Ret.), a Federal District Court judge for 20 years, has successfully mediated numerous class action settlements that have been approved by various district courts.[1] With the assistance of Judge Andersen (Ret.), the parties reached the proposed Settlement summarized below.

## II.    THE SETTLEMENT

### A.    The Settlement Class

The proposed Settlement Class is defined as: All residents of the United States who used a payment card to make a purchase at a "Dickey's Barbecue Pit®" restaurant identified in Exhibit B to the Settlement Agreement between April 23, 2019, and October 29, 2020. The Settlement Class specifically excludes: (i) Dickey's and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (iii) any Person who has agreed to release his or her claim(s) against Dickey's arising out of or related to the Security Incident; and (iv) the Judge assigned to evaluate the fairness of this settlement and all court personnel directly involved therewith.

---

[1] https://www.jamsadr.com/andersen/

### B.     The Settlement Relief

The parties negotiated a $2,350,000 all-cash, non-reversionary Qualified Settlement Fund in exchange for a release of all claims that were or could have been alleged in this case based on the facts of the Security Incident. Notice and administrative expenses will be paid from the Qualified Settlement Fund, along with any attorneys' fees and expense reimbursements approved by the Court. Co-Lead Class Counsel intend to seek and will separately apply for up to one-third of the settlement fund in attorneys' fees, plus reimbursement of expenses, as well as a $1,500 service award for each of the class representatives. Notice and administration expenses are expected not to exceed $363,000.

Plaintiffs believe that the $2,350,000 settlement is a very favorable result in relation to their potential aggregate recoverable damages had they obtained class certification and prevailed at trial and considering the risks in continuing to litigate. The distribution plan is also targeted to compensate Class Members fairly based on their actual and recoverable damages.

The Settlement Agreement sets forth a straightforward claims process with the use of a simple Claim Form. *See* Claim Form, attached as Exhibit C to Exhibit 1. Class Members will be entitled to relief in their chosen category. Class Members will be given an opportunity to cure any deficiencies in their claim submissions.

Class Members may choose from the following three options:

1.     **Reimbursement of Out-of-Pocket Losses**: Class Members who suffered out-of-pocket losses as a result of the Security Incident may file a claim seeking reimbursement of those expenses. Specifically, a Class Member may choose to receive compensation for unreimbursed losses upon submission of a valid and timely Claim and supporting documentation

for out-of-pocket losses more likely than not resulting from the Security Incident, up to a maximum amount of $5,000.

          **2.**      **Cash Option**: Class Members may select to receive a cash payment. The parties estimate that California Class Members will receive approximately $100 and non-California Class Members will receive approximately $50. The difference between California and non-California Class Members is to account for the damages under the CCPA, which if the case was to be litigated, would likely be the strongest claim and the claim with the most significant damages.[2]

The exact value of Cash Option claims will be calculated pursuant to the provisions of SA ¶ 3.6.

          **3.**      **Credit Monitoring Services**: Class Members may file a claim to receive free Credit Monitoring Services. The Credit Monitoring Services will consist of a 24-month plan providing: (i) three-bureau credit monitoring, (ii) identity restoration services that provide professional fraud resolution assistance to Settlement Class Members who experience identity theft or fraud, helping them with identity recovery and restoration, and (iii) $1,000,000 of identity theft insurance coverage. Credit Monitoring Services are valid to be activated within twelve months from the mailing or emailing of the activation code.

    **C.**      **Business Practices Changes**

In addition to the Qualified Settlement Fund, the Settlement provides that Dickey's must adopt certain business practice changes designed to safeguard payment card information for a period of at least three years. SA ¶ 11. The cost of these business practices changes will not be

---

[2] The CCPA provides for the recovery of, *inter alia*, "damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A).

drawn from the Qualified Settlement Fund. *Id*. These changes provide meaningful non-monetary relief that substantially reduce the risk that Settlement Class Members will suffer the same harm in the future.

### D.     Notice to the Class and Settlement Administration

The cost of notice and claims administration shall be paid from the Qualified Settlement Fund.

### E.     Attorneys' Fees, Costs, and Expenses and Representative Plaintiff Service Awards

Co-Lead Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs and expenses together with service awards for the class representatives. The fee application will be posted promptly on the Settlement website. As noted above, Co-Lead Class Counsel intend to apply for a fee of up to one-third of the common fund, and will file a motion detailing this request. Class Counsel further intend to apply for service awards of up to $1,500 for each of the Proposed Representative Plaintiffs.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.     Legal Standard and Six-Factor Test

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2nd Cir. 1998); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981). The "court should approve a settlement if it is fair, reasonable, and adequate, and consistent with the public interest." *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007). There is a strong presumption that the compromise is fair and reasonable. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 n.31 (5th Cir. 1983) ("[N]either the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute.").

Rule 23(e) sets forth a two-step process for preliminary and final approval. "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd*., 214 F.R.D. 424, 426 (E.D. Tex. 2002). "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id*.

At the preliminary approval stage, the Court must ascertain whether the proposed settlement is likely to be approved as fair, reasonable, and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. FED. R. CIV. P. 23(e)(1)(B). Rule 23(e)(2), as recently amended, provides that in determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

The Fifth Circuit also provides guidance for courts to consider in determining whether to approve a settlement, including: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the probability of plaintiffs' success on the merits; (4) the range of possible recovery compared to the probability of plaintiffs' success on the merits; (5) the stage of the proceedings and the amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v.*

*General Motors Corp.*, 703 Fed.2d 170, 172 (5th Cir. 1983). These factors overlap substantially with the Rule 23 factors.

In sum, a settlement process is fair when "'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval.'" *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (quoting *Manual for Complex Litigation*, *Second* § 30.44 (1985)).

### B.    The Settlement Satisfies the Standards for Preliminary Approval

### 1.    The Settlement Class is Adequately Represented

Proposed Co-Lead Class Counsel are among the most highly experienced data breach class action attorneys in the United States. *See generally,* Barnow Decl., Johns Decl., Yanchunis Decl. Proposed Co-Lead Class Counsel are well-informed of the legal claims at issue and the risks of this case. Since the inception of this litigation, they have worked diligently to advance Proposed Representative Plaintiffs' and other Settlement Class Members' interests. They successfully consolidated the cases pending in this Court, organized and worked together cooperatively with counsel from several cases, negotiated a nationwide class settlement, and engaged in confirmatory discovery. Proposed Co-Lead Class Counsel were able to reach this excellent result for the Class efficiently and before significantly more time and expense was incurred at later stages of the litigation.

Ben Barnow is nationally recognized for his experience in leading some of the nation's largest consumer class actions and has been recognized as a Titan of the Plaintiffs Bar.[3] As a court-

---

[3] *See* Sindhu Sundar, *Titan of the Plaintiffs Bar: Ben Barnow*, LAW360(Oct. 8, 2014, 7:40 PM), www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow

appointed lead counsel or equivalent designation, he has successfully led over forty major class actions (including MDLs) where class-wide recoveries were achieved, resulting in benefits valued in excess of five billion dollars being made available to class members. This includes leading high profile privacy class actions where class settlements were achieved, including, *inter alia*, *In Re: Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL 2258, *In Re: TJX Retail Security Breach Litigation*, MDL No. 1838, *In Re: Countrywide Fin. Corp. Customer Data Security Breach Litigation*, MDL No. 1998, *Lockwood v. Certegy Check Services, Inc.*, 07-cv-01434 (M.D. Fla.), *Rowe v. Unicare Life and Health Insurance Co.*, 2009cv2286 (N.D. Ill.), *Orr v. InterContinental Hotels Group, PLC.*, 17-cv-1622 (N.D. Ga.), *In re: Zappos.com Inc. Customer Data Security Breach Litigation*, 12-cv-325 (D. Nev.) and *Winstead v. ComplyRight*, No. 1:18-cv-4990 (N.D. Ill.).

Mr. Johns has extensive experience in litigating data breach class action lawsuits. Mr. Johns was appointed as co-lead class counsel for plaintiffs in the data breach action, *In re Wawa, Inc. Data Breach Litig.*, No. 19-6019 (E.D. Pa.), wherein the court recently granted preliminary approval of a class action settlement (ECF No. 234). In *Gordon et al. v. Chipotle Mexican Grill, Inc.*, the court granted final approval of a data breach settlement where Mr. Johns was appointed as one of three co-lead class counsel firms. No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *2 (D. Colo. Dec. 16, 2019). And in *Bray et al. v. GameStop Corp.,* final approval of a class-wide settlement has been granted. No. 1:17-cv-01365-JEJ, 2018 U.S. Dist. LEXIS 226221, at *1-2 (D. Del. Dec. 19, 2018). There, too, Mr. Johns was appointed by the Court as co-lead class counsel. *Id*. at *8. These settlements afforded consumers affected by a data breach with significant benefits. Mr. Johns is also appointed as interim co-lead counsel in *In re Rutter's Inc. Data Security Breach Litigation,* No. 1:20-cv-382 (M.D. Pa.). In *Perdue v. Hy-Vee, Inc.*, No. 1:19-cv-01330-

MMM-JEH, 2021 U.S. Dist. LEXIS 135441, at *9 (C.D. Ill. July 21, 2021), a data breach class action, the court recently granted final approval of a class action settlement appointing Mr. Johns as co-lead class counsel along with Mr. Barnow.

John Yanchunis leads the class action practice group at Morgan & Morgan, a firm of over 700 lawyers representing plaintiffs only in a contingent based practice. The law firm maintains offices throughout the United States, including Texas.

Mr. Yanchunis began the practice of law in 1982 following the completion of a two-year clerkship with the Honorable Carl O. Bue, Jr., United States District Judge, Southern District of Texas, Houston Division (deceased). The vast majority of his practice, spanning more than 38 years, has concentrated on complex litigation, including consumer class actions for over 25 of those years. He has represented consumers in many class action cases, including as co-lead counsel in the successful prosecution and settlement of two of the largest class action cases in the United States: *Fresco v. Automotive Directions, Inc.*, No. 03-61063-JEM, and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM (S.D. Fla.).

Mr. Yanchunis has served in leadership positions in many of the largest data breach cases filed: *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK (N.D. Cal.) (Lead Counsel) ( a data breach involving 2.9 billion users worldwide -final approval of a settlement of a class of over 97 million US Consumers and over 200,000 Israeli citizens with a common fund of $117,500,000 entered in May 2020, now on appeal to the 9th Circuit ); *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (a data breach involving 145 million consumers-final judgment approving largest data breach settlement in history was affirmed by the 11th Circuit); *Adkins v. Facebook, Inc.*, No. 18-cv-5982-WHA (N.D. Cal.) (co-lead counsel) (a data breach involving 40 million worldwide- 8 million

of whom are US residents-obtained one of the few contested certifications of a Rule 23(b)(2) injunction class, final approval of a class action settlement has been entered); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, No. 15-mc-01394-ABJ (D.D.C.) (a data breach involving 22 million individuals including all federal judges-consumers-member of the Executive Committee) (dismissal on standing grounds reversed on appeal to the D.C. Circuit, litigation pending ); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 14-md-02583-TWT (N.D. Ga.) (co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers upheld by the 8th Circuit). Aside from the cases identified above, Mr. Yanchunis has litigated and settled a significant number of other data breach, data compromise and privacy class cases.

Proposed Representative Plaintiffs have worked diligently on behalf of the Settlement Class. They stepped forward to prosecute this action on behalf of all Settlement Class Members, provided input in connection with the drafting of the consolidated complaint, were prepared to respond to discovery, and reviewed and approved the Settlement.

This factor favors preliminary approval.

### 2. The Settlement is the Result of Arm's Length Negotiations and There is No Fraud or Collusion

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). The negotiations in this matter occurred at arm's length with the assistance of an experienced mediator. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas v. Kmart Corp.*, 234 F.R.D.

688, 693 (D. Colo. 2006). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). As discussed above, the parties reached an agreement on all material terms after weeks of negotiation, including an all-day mediation before the Hon. Wayne Andersen (Ret). The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator such as Judge Andersen (Ret.) supports the conclusion that the Settlement was achieved free of collusion, and merits preliminary approval. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) ("The involvement of an experienced and well-known mediator is also a strong indicator of procedural fairness."). This factor favors preliminary approval.

### 3. The Settlement Benefits Being Made Available to the Settlement Class Members are Excellent in Comparison to the Range of Possible Recovery and Considering the Plaintiffs' Likelihood of Success on the Merits

A settlement must take "into account the uncertainty and risks involved in litigation" as well as "the strength of the claims and possible defenses." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 727 (E.D. La. 2008); *see also Klein,* 705 F. Supp. 2d at 656. "In determining whether a settlement is fair given the potential range of recovery, the Court is guided by 'the fact that a proposed settlement only amounts to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Kemp v. Tower Loan of Miss., LLC*, No. 3:15-CV-499-CWR-LRA, 2017 U.S. Dist. LEXIS 209085, at *18 (S.D. Miss. Dec. 20, 2017).

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement, supports that the Settlement should be preliminarily approved.

Proposed Representative Plaintiffs and Proposed Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But they also recognize the substantial risks involved in continuing this litigation. Dickey's has aggressively maintained its positions that the case should be dismissed, a litigated class could not be certified, that Dickey's would not be found liable at trial, and that Proposed Representative Plaintiffs would not be able to prove damages resulting from the Security Incident. While they disagree with Dickey's' views, Proposed Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (one of the most important factors in assessing a class settlement is the probability of the plaintiffs' success on the merits).

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, further dispositive motions and, of course, a trial and appeal. Given the complex nature of the Security Incident at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay. *See, e.g.*, *Garza v. Sporting Goods*

14

*Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *56 (W.D. Tex. Feb. 6, 1996) (approving class settlement and observing "if the plaintiffs were to continue with the litigation and prevail at trial, and even if the damages awarded were in excess of the amount of the settlement obtained, there is no doubt lengthy appeals would follow as would enormous costs and expenses").

The Settlement, in contrast, provides certainty of recovery for Class Members. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291-92 (W.D. Tex. 2007) (guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement). As discussed above, all Settlement Class Members are eligible for a cash payment. Those Settlement Class Members from California are eligible for a higher payment to account for their higher potential recovery under the CCPA, in line with Rule 23 and the factors set forth by the Fifth Circuit. The Settlement also provides Settlement Class Members who suffered significant out-of-pocket losses resulting from the Security Incident the opportunity to seek reimbursement. Likewise, Settlement Class Members who would prefer to receive two years of free credit monitoring instead have that option. In sum, the Settlement provides excellent benefits. In order to receive the benefits of the Settlement, Settlement Class Members need only log on to the Settlement Website and complete a simple Claim Form.

This factor favors approval of the settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 U.S. Dist. LEXIS 29836, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted).

15

### 4. The Proposed Method of Distributing Relief Supports Preliminary Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The advisory committee's notes to this recently enacted provision instruct: "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendment.

As discussed above, Settlement Class Members will be given several options for relief, which were carefully crafted to account for different levels of harm, the value of potential claims, and personal preference. Providing Settlement Class Members with a choice of benefits allows them to select whichever benefit they value most, thus maximizing the value of the Qualified Settlement Fund to the Settlement Class and the Class Member. The Settlement and Claim Form are designed to facilitate the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members need only complete a simple Claim Form and submit it along with supporting documentation (if applicable). All claims will be processed by an experienced and nationally recognized class action administer.

The methods of distributing relief to Settlement Class Members further support preliminary approval of the Settlement.

### 5. The Terms of the Proposed Award of Attorneys' Fees, Costs, and Expenses Supports Preliminary Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The advisory committee's notes instruct:

"Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement. Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendment.

The terms of the proposed attorneys' fee award are consistent with class action best practices. The parties did not discuss attorneys' fees, costs, and expenses until after all substantive elements of the Settlement were agreed upon. Additionally, the amount of any attorneys' fee award is intended to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 9.3.

Proposed Class Counsel intend to seek an attorneys' fee award of up to one-third of the Qualified Settlement Fund, in addition to also seeking reasonable litigation costs and expenses. In compliance with Rule 23(h), Proposed Representative Plaintiffs will file a motion and supporting memorandum of law seeking this relief with the Court (and will upload to the Settlement website) not less than fourteen days prior to the deadline for Settlement Class Members to file objections to the Settlement.

### 6.    The Settling Parties' Agreements

The parties executed the Settlement Agreement on August 11, 2021. This is the only agreement made in connection with the proposal.

### 7.    The Settlement Treats Settlement Class Members Equitably

The Settlement provides all Settlement Class Members with the option of filing claims and gives them each several options. As discussed above, the difference in cash payment amounts between California Class Members and non-California Class Members is to account for the fact

that California Class Members have stronger potential claims because of the CCPA. *See In re Premera Blue Cross Customer Data Security Breach Litig.*, (D. Or.) Case No. 3:15-md-2633-SI, Pls.' Motion for Final App. 30, ECF No. 281 (Providing extra settlement funds to California class members due to the "strength of their claims" under the California Confidentiality of Medical Information Act).

### 8.  The Stage of the Proceedings and the Amount of Discovery Completed

The purpose of this factor is to ensure there is not an imbalance of information between the parties and to prevent uneducated guesswork. *Corrugated Container Antitrust Litig.*, 643 F.2d at 211. Here, although the parties settled prior to formal discovery, they engaged in pre-mediation exchange of information in addition to targeted confirmatory discovery to verify the underlying facts and the adequacy of the Settlement. This included receiving and reviewing key documents from Dickey's, including the forensic report on the Security Incident. Leveraging their experience in the area and adhering to the directive of FED. R. CIV. P. 1 (directing parties "to secure the just, speedy, and inexpensive determination of every action and proceeding."), Co-Lead Class Counsel were able to secure an excellent settlement at an early stage. This factor thus supports preliminary approval of the Settlement.

### 9.  The Opinion of Experienced Class Counsel

Lastly, in evaluating the fairness of consideration offered in settlement, courts should give significant weight to the negotiated resolution of the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Absent fraud or collusion, the court "should be hesitant to substitute its own judgment for that of counsel." *Id*. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what

18

concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id*.

As discussed above, proposed Co-Lead Class Counsel have substantial experience serving as class counsel in consumer fraud class actions, and they endorse the Settlement as fair, reasonable, and adequate.

As the foregoing analysis demonstrates, the Settlement is likely to be approved as fair, reasonable, and adequate, and should be preliminarily approved.

## IV.    THE PROPOSED CLASS SHOULD BE CERTIFIED

At the preliminary approval stage, the Court must address whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B)(ii). Certification of a settlement class is proper if the four requirements in Rule 23(a) and one of the subsections of Rule 23(b) are met. *McNamara*, 214 F.R.D. at 428. The Court should evaluate certification in the context of the settlement because questions regarding the manageability of the case at trial are no longer relevant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, preliminary certification is proper because it "serves the primary goals of Rule 23, namely economies of time, effort, and expense without sacrificing fairness" to the settlement class. *Telles v. Midland Coll.*, No. MO:17-CV-00083-DC, 2018 U.S. Dist. LEXIS 227812, at *8 (W.D. Tex. Apr. 30, 2018).

### A.    Rule 23(a) Requirements Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). These requirements are satisfied here.

### 1. The Settlement Class Is Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Settlement Class consists of approximately 725,000 individuals. Thus, it would be impracticable to join all members of the Settlement Class, and numerosity is met. *See*, *e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (100 to 150 members "is within the range that generally satisfies the numerosity requirement").

### 2. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of a question of law or fact that is common to all Settlement Class Members and capable of class-wide resolution, the determination of which is central to the validity of all class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[E]ven a single common question will do." *Id*. "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d 620 at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)). "The Fifth Circuit has held that the threshold of commonality is not a high one." *Walton v. Franklin Collection Agency*, 190 F.R.D. 404, 408 (N.D. Miss. 2000).

Several questions of law and fact common to all Settlement Class Members exist, including: (i) whether Dickey's violated common law duties, prohibitions on unfair and deceptive trade practices, other legal obligations, and industry standard practices in causing the Security Incident; (ii) whether Dickey's failed to properly secure and protect Settlement Class Members' Card Information, and (iii) whether Settlement Class Members are entitled to damages, injunctive

relief, or other equitable relief, and the measure of such damages and relief. These legal and factual questions are common to each member of the Settlement Class. The commonality requirement is satisfied.

### 3. The Proposed Representative Plaintiffs' Claims Are Typical

Rule 23(a)(3) typicality is satisfied where the class representatives' claims arise from a common course of conduct and are based on similar legal theories as absent class members. *Vaughn*, 627 F. Supp. 2d at 745. "[E]ven if there are factual distinctions between the claims of the named plaintiffs and those of other class members[,]" typically may be met. *Bywaters v. United States*, 196 F.R.D. 458, 467 (E.D. Tex. 2000). Typicality seeks to protect conflicts between the named plaintiffs' interests and the class. *Mullen*, 186 F.3d at 625-26.

Proposed Representative Plaintiffs and all other Settlement Class Members' claims arise from Dickey's' alleged failure to implement and maintain reasonable security measures and the resulting Security Incident, and their claims are based on the same legal theories. As a result, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. The Proposed Representative Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to prosecute the action, and (ii) the interests of the proposed class representatives do not conflict with the interests of the class. *See Morrow v. Washington*, 277 F.R.D. 172, 195 (E.D. Tex. 2011). The adequacy of the proposed representatives and class counsel is presumed in the absence of specific proof to the contrary. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005).

Proposed Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class. They each have been involved in this matter since prior to the filings of their initial pleadings, including participating in approving the terms of the settlement agreement and being prepared to participate in discovery. Their interests are aligned with those of the other Settlement Class Members. Additionally, Proposed Class Counsel are well-qualified to represent the Settlement Class, as they each possess significant experience leading the prosecution of complex class action matters, including payment card data breaches. *See* III(B)(1), *supra*. The adequacy requirement is satisfied.

## B.     The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). These requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting FED. R. CIV. P. 23(b)(3) advisory committee notes to 1966 Amendment).

Both of these requirements are satisfied here.

### 1.     Common Questions Predominate

"Predominance examines whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vaughn*, 627 F. Supp. 2d at 745-46 (quoting *Amchem*, 521 U.S. at 623). The predominance test is readily met in cases alleging consumer fraud. *Amchem*, 521 U.S. at 625. "Where 'defendants' liability predominates over any individual issues involving plaintiffs,

and the Settlement Agreement will insure that funds are available' to compensate plaintiffs, predominance is satisfied." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012), *aff'd sub nom*. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

Proposed Representative Plaintiffs assert claims for Negligence, Negligence *Per Se*, Breach of Implied Contract, and violations of state statutes prohibiting unfair and deceptive trade practices. The key questions in this litigation are Dickey's failed to take reasonable and adequate measures to prevent the Security Incident, detect the Security Incident once initiated, remedy and mitigate the effects of the Security Incident, and to timely notify affected persons of the Security Incident in its aftermath. These questions predominate over any individual issues. The predominance requirement is satisfied.

### 2. Class Treatment Is Superior to Other Forms of Adjudication

"Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy." *Id*. (citing *Mullen*, 186 F.3d at 627). Because this is a settlement Class, issues relating to the manageability of a class trial are irrelevant. *Vaughn*, 627 F. Supp. 2d at 746 (citing *Amchem*, 521 U.S. at 620).

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3). "Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy." *Vaughn*, 627 F. Supp. 2d at 746 (citing *Mullen*, 186 F.3d at 627). Because this is a settlement Class,

issues relating to the manageability of a class trial are irrelevant. *Id*. (citing *Amchem*, 521 U.S. at 620).

A class action is the only viable method to adjudicate the claims at issue and provides the only viable method of resolving the dispute. Each individual Class Member's damages are too small to justify individual litigation. It is neither economically feasible nor judicially efficient for Class Members to pursue their claims against Defendants on an individual basis. *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). The requirements of Rule 23(b)(3) are satisfied.

## V.      THE CLASS NOTICE PROGRAM SHOULD BE PRELIMINARILY APPROVED

Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). And, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See*, *e.g.*, *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]").

The proposed Notice Program, as detailed in the Declaration of Cameron R. Azari, attached as Exhibit 5, ¶¶ 16-38, satisfies all of these criteria. The Notice Plan was devised by one of the leading experts in designing and implementing class action notice. The Notice Plan will inform

Settlement Class Members, in plain language so that it will be understood, of the substantive terms of the Settlement, their options for obtaining benefits, opting-out of, or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Plan relies on a combination of direct emailing and targeted media notice to reach not less than 70% of the proposed Settlement Class. *Id.* ¶ 17. Epiq will establish a dedicated Settlement Website and shall maintain and update the website throughout the claim period with relevant documents and Court filings. *Id.* ¶ 33. A toll-free help line shall be made available to allow Class Members to listen to answers to FAQs or request that a claim form be mailed to them. *Id.* ¶ 34. The notice plan meets the requirements of FED. R. CIV. P. 23 and constitutional due process. Dickey's will also be fulfilling the notification requirements under the Class Action Fairness Act pursuant to 28 U.S.C. § 1715.

## VI.    CONCLUSION

The Settlement readily meets the standard for preliminary approval. Representative Plaintiffs therefore respectfully request that this Court enter the proposed order submitted herewith, 1) certifying the proposed class for settlement purposes, 2) preliminarily approving the Settlement, 3) appointing Co-Lead Class Counsel and Additional Class Counsel as requested in the proposed Preliminary Approval Order, 4) appointing Plaintiffs as Representative Plaintiffs, 5) appointing Epiq as the Settlement Administrator, 5) approving the proposed Notice Plan, and 6) setting a Fairness hearing for final approval of the Settlement and to consider the application for attorneys' fees, service awards, and reimbursement of costs and expenses.

Plaintiffs respectfully request that the Final Fairness Hearing be scheduled no earlier than 170 days after entry of the Preliminary Approval Order.

Dated: August 13, 2021

Respectfully submitted,

*/s/ Ben Barnow*
Ben Barnow (*pro hac vice*)
Anthony L. Parkhill (*pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Benjamin F. Johns (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
Alex M. Kashurba (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
seh@chimicles.com
amk@chimicles.com

John A. Yanchunis
Ryan J. McGee
Francesca Kester
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Group, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Facsimile: (813) 223-5405
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
fkester@forthepeople.com

Bruce W. Steckler
State Bar No. 00785039
Austin P. Smith
State Bar No. 24102506
**STECKLER WAYNE COCHRAN PLLC**
1270 Hillcrest Road, Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
Fax: 972-387-4041
bruce@swclaw.com
austin@swclaw.com

Cory S. Fein (State Bar No. 06879450)
**CORY FEIN LAW FIRM**
712 Main Street, Suite 800
Houston, TX 77002
Tel.: (281) 254-7717
Fax: (530) 748-0601
cory@corfeinlaw.com

Paul D. Stickney
State Bar No. 00789924
12720 Hilcrest Road, Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
judgestick@gmail.com

Brian P. Murray
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue Rm 530
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

Paul C. Whalen
**LAW OFFICE OF PAUL C. WHALEN,
P.C.**
61 Spray Falls Road
Haines Falls, NY 12436
Tel: (516) 426-6870
pcwhalen@protonmail.com

## CERTIFICATE OF CONFERENCE

On August 13, 2021, I conferred with Christopher S. Dodrill, one of the attorneys for Defendant Dickey's Barbecue Restaurants, Inc., and Dickey's Capital Group, Inc. regarding Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Mr. Dodrill does not oppose the motion.

Also on August 13, 2021, I conferred with Andrew K. York, counsel for plaintiffs in *Jeary* (3:21-cv-0137-L). I, along with my colleague, Bruce W. Steckler, advised him that we had obtained a settlement and were filing a motion for preliminary approval of the Settlement and that the terms of the Settlement are confidential until it is publicly filed. He advised that he could not take a position on the Motion at this time. Proposed Co-Lead Class Counsel are hopeful that counsel in *Jeary* will support the Settlement. In any event, I look forward to working with them in an amicable and productive manner.

By: */s/ Ben Barnow*

*Proposed Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record through the Court's CM/ECF system on August 13, 2021.

By: */s/ Ben Barnow*

*Proposed Co-Lead Class Counsel*

28