# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| DEMI KOSTKA and VINCENT JEAR, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DICKEY'S BARBECUE RESTAURANTS, INC., <br><br> Defendant. | Civil Action No. 3:20-CV-3424-K <br><br> **Consolidated with:** <br><br> Civil Action No. 3:20-CV-3603-K <br> Civil Action No. 3:21-CV-0137-K <br> Civil Action No. 3:21-CV-0769-K <br><br> Hon. Ed Kinkeade |

### *JEARY* PLAINTIFFS' OPPOSITION TO THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………………………………………...i

**TABLE OF AUTHORITIES**……………………………………………………………………ii

**INTRODUCTION**……………………………………………………………………………….1

**FACTUAL BACKGROUND**......................................................................................................3

    *The Data Breach*……………………………………………………………………..3

    *The Settlement*……………………………………………………………………….4

**LEGAL STANDARD**…………………………………………………………………………….5

**ARGUMENT**……………………………………………………………………………………..6

    **The Proposed Settlement Agreement is Procedurally Inadequate**……………………7

    **The Proposed Settlement Agreement also is Substantively Inadequate**…………….10

**CONCLUSION**…………………………………………………………………………………14

# **TABLE OF AUTHORITIES**

Cases

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2nd Cir. 2001)…………………………………………….6

*Gardiner v. Walmart, Inc.*, No. 20-cv-4618, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)………13

*In re: The Home Depot, Inc., Customer Data Security Breach Litig.*,

    14-md-2583, 2017 WL 9605208 (N.D. Ga. Aug. 1, 2017)………………………………12

*In re: Wawa, Inc. Data Security Litig.*, No. 19-cv-6019,

    2021 WL 3276148 (E.D. Pa. July 30, 2021)……………………………………………..12

*In re Wendy's Co.*, No. 16-cv-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018)……………….8

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th Cir. 2017)………………………..6

*Lusk v. Five Guys Enterprises LLC*, No. 17-cv-762,

    2020 WL 7390478 (E.D. Cal. Oct. 19, 2020)..............................................................7, 10

*Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013)……………………………………………9-10

*Mirfashi v. Fleet Mortg. Corp.*, 450 F.3d 745 (7th Cir. 2006)……………………………………….6

*Parsons v. Kimpton Hotel & Rest. Grp., LLC*,

    No. 16-cv-5387, 2018 WL 4441268 (N.D. Cal. Sept. 13, 2018)…………………………11

*Purdue v. Hy-Vee, Inc.*, No. 19-cv-1330, 2021 WL 3081051 (C.D. Ill. July 21, 2021)…………12

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)……………………………………..6

Rules

Fed. R. Civ. P. 23……………………………………………………………………………5, 6, 7, 10

Plaintiffs Tammy Jeary, Gabrielle McGuire and Jennifer Roy (collectively, the "*Jeary* Plaintiffs"), by and through counsel, submit this Opposition to the Motion for Preliminary Approval of Class Action Settlement (ECF 62) ("Motion"), and state as follows:

## INTRODUCTION

When the Judicial Panel for Multidistrict Litigation ("JPML") declined to consolidate and centralize the various class actions arising from the data breach experienced by Defendants Dickey's Barbecue Restaurants, Inc. and Dickey's Capital Group (together, "Dickey's" or "Defendants"), it did so because, given the "minimal number of actions" involved, "informal coordination among the small number of parties and involved courts appear[ed] eminently feasible." The undersigned took that admonition seriously. Others, unfortunately, did not. To the contrary, counsel for the named plaintiffs in *Kostka et al. v. Dickey's Barbecue Restaurants, Inc.*, No. 20-cv-3424 (N.D. Tex.), *Adams v. Dickey's Barbecue Restaurants, Inc. et al.*, No. 20-cv-3603 (N.D. Tex.), and *Stroman et al. v. Dickey's Barbecue Restaurants et al.*, No. 21-cv-0769 (N.D. Tex.) (collectively, "Movants") reached out to and mediated in secret with Dickey's. They now ask this Court to preliminarily approve their proposed global resolution of all claims arising from the data breach, a settlement about which the *Jeary* Plaintiffs did not learn until hours before it was made public.

Movants did not inform the undersigned or counsel in related actions then-pending in California (the "California cases")[1] that they were negotiating a global settlement, let alone involve them in the settlement discussions. Movants' conduct is surprising in light of their prior

---

[1] On August 20, 2021, the California cases were transferred to this District pursuant to 28 U.S.C. § 1404. See ECF No. 27, *Diczhazy et al. v. Dickey's Barbecue Restaurants, Inc., et al.*, Case No. 3:20-cv-02189-MDD; ECF No. 16, *Marhefka v. Dickey's Barbecue Restaurants, Inc., et al.*, Case No. 3:21-cv-00585-L-MDD. Counsel for plaintiffs in those actions advised the undersigned that they intend to file with the Court their position regarding the proposed settlement in due course.

commitments to both the JPML and this Court: They opposed multidistrict litigation on grounds they and counsel in the other cases could and should effectively coordinate without the need for formal transfer, and represented to this Court that they would work cooperatively with other counsel.

Dickey's also failed to advise all other Plaintiffs' counsel of its desire to resolve these actions, let alone the settlement discussions, or share with them any of the confirmatory information it provided to Movants despite previously claiming that even organizational issues could not be decided until its Motions to Transfer the California actions were ruled upon. Dickey's instead chose to negotiate with a small subset of attorneys who apparently solicited settlement discussions—and secretly mediated and settled these actions without the Court first appointing lead counsel to best represent the interests of the Class.

While these procedural defects are troublesome, however, they do not animate this Opposition. It is the proposed settlement terms that were just shared for the first time with the *Jeary* Plaintiffs that compel them to oppose preliminary approval. Not surprisingly, when a defendant—rather than the Court—self-selects class counsel, the proposed settlement almost always benefits the settling defendant and provides little relief to the Class whose claims the settlement purports to release. Indeed, here, the proposed common fund is a pittance—likely yielding $1.64 per Class member. Attorneys' fees, expenses, Class representative service awards, and the costs of notice and administration largely will deplete the proposed fund before Class members receive even a dime. And that is assuming the Class actually consists of 725,000 Class members rather than the ***3 million*** consumers whose personal information was initially reported to have been misappropriated. Moreover, the *Jeary* Plaintiffs fail to grasp how they or the absent

2

Class can even fully evaluate the settlement given that Movants failed to share *any* of the informal discovery they received and which purportedly informed their secret settlement discussions.

Based on the public information available to the *Jeary* Plaintiffs, the proposed settlement appears unfair, unreasonable, and inadequate. As such, the Court should deny preliminary approval and require Dickey's to provide to counsel in all related actions all information Movants received from Dickey's, so that *all* counsel can assess the proposed settlement and, if needed, secure additional information and work together cooperatively to address and resolve any deficiencies or other issues or concerns in advance of presenting a proposed settlement for court approval.

## FACTUAL BACKGROUND

*The Data Breach*

As this Court is well aware, between July 2019 and August 2020, Dickey's experienced a data breach (the "Data Breach") that gave rise to these related actions. *Jeary* Compl., ECF 1, ¶2. In October 2020, hackers began selling payment card information from the Data Breach and claimed the first tranche of stolen data consisted of payment card information associated with ***more than 3 million*** payment cards belonging Dickey's customers. *Id.* ¶ 38-40.

A wave of class actions soon followed. In November 2020, the plaintiffs in *Diczhazy et al. v. Dickey's Barbecue Restaurants, Inc. et al.*, 3:20-cv-02189 (S.D. Cal.), the first case filed in federal court related to the Data Breach, moved the JPML to transfer and centralize all related actions arising from the Breach. Both Movants and Dickey's opposed centralization, contending that the parties could and should informally cooperate and coordinate the actions. The JPML agreed and ordered the parties to cooperate and coordinate informally.

After the JPML ruled, all cases pending in this District were transferred to this Court. The Court subsequently consolidated the actions and several competing interim leadership applications

3

were then filed. Dickey's opposed the appointment of any interim lead counsel until after its motions to transfer the California actions were resolved, and insisted that counsel for plaintiffs instead cooperate and coordinate informally. Interim leadership applications were fully briefed in April 2021[2].

***The Settlement***

According to the Motion, however, less than a month later and while the various motions were pending, Dickey's and Movants surreptitiously commenced settlement talks. Neither Dickey's nor Movants informed counsel for the *Jeary* Plaintiffs' or plaintiffs' counsel in the related California cases of the mediation or invited them to participate, despite the lack of a court-approved leadership structure and the pendency of lead counsel motions. The settlement apparently was reached with little effort: in a single mediation session, Movants and Dickey's reached a settlement that provides for a settlement fund, multiple alternative tiers of recovery for Class members, and injunctive relief. *See* Motion.

Late on Friday, August 13, 2021, without any forewarning, Movants contacted the undersigned and advised that a settlement had been reached, and that Movants would be moving for preliminary approval immediately. Movants asked the *Jeary* Plaintiffs to consent to the settlement, but refused to provide ***any*** details regarding either the settlement's terms. Movants instead suggested counsel review the Motion once filed. The *Jeary* Plaintiffs could not consent to

---

[2] The Court, just days before Movants filed their Motion, denied all pending applications for interim leadership (ECF 61) and directed the parties to file applications for permanent leadership on August 30, 2021. This order, to the knowledge of counsel for the *Jeary* Plaintiffs, is still in effect even as Movants' preliminary approval Motion remains pending. Counsel for the *Jeary* Plaintiffs intend to comply with the Court's order on leadership applications unless the Court advises that the filing and pendency of the instant Motion has changed that schedule. If appointed, counsel for the *Jeary* Plaintiffs would investigate the proposed settlement, the information shared and the negotiations leading up to that settlement to determine the most appropriate next steps regarding a potential settlement and how best to proceed on behalf of Plaintiffs and the proposed Class.

a secret settlement about which they knew almost nothing and, therefore, advised that they could not take a position on the Motion at the time of the call.

In the Motion, Movants claim the Settlement Class covers all U.S. residents who used a payment card at certain Dickey's locations between April 23, 2019 and October 29, 2020—only 725,000 individuals. As for the settlement itself, it creates a $2.35 million settlement fund, and limits Class members to one of three tiers of relief: 1) reimbursement of up to $5,000 for out-of-pocket losses caused by the Data Breach; 2) a cash payment of up to $100 for California residents and $50 for non-California residents; or 3) 24 months of credit monitoring services. Dickey's also agreed to implement and retain for at least three years certain changes to its security policies.

Critically, attorneys' fees, expenses, and the costs of notice and administration will be deducted from the settlement fund before any money is made available to Class members. Movants intend to apply for a fee award of up to one-third of the settlement fund: $783,333; have not provided an estimate of the costs and expenses for which they will seek reimbursement; and estimate that notice and administration will cost approximately $363,000. Finally, Movants state that they will seek a service award of $1,500 for each of the six proposed Class representatives.[3] Thus, of the $2.35 million fund, little more than half ($1,194,667) will be made available to a minimum of 725,000 Class members. Should they all seek cash relief, those 725,000 would receive less than $2 each.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) governs preliminary approval of class settlements. *See* Fed. R. Civ. P. 23(e). A proposed class settlement should be approved only if it is

---

[3] Neither the *Jeary* Plaintiffs nor any of the plaintiffs in the California cases are considered Class representatives under the proposed settlement, though the *Jeary* Plaintiffs are identified as such in the proposed preliminary approval order.

5

"fundamentally fair, adequate, and reasonable." *Id.* "[D]istrict judges must . . . exercise the highest degree of vigilance in scrutinizing proposed settlements of class action to consider whether the settlement is fair, adequate, and reasonable, and not a product of collusion." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (quoting *Mirfashi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006)). Settlement approval prior to formally certifying the class requires a higher standard of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2nd Cir. 2001).

Courts must examine four factors to determine whether to preliminary approve a proposed class settlement, including whether: A) the representatives and counsel adequately represented the class; B) the proposal was negotiated at arm's length; C) the relief is adequate; and D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).[4] The first two factors are procedural in nature, while the second two focus on the substance of the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2) Advisory Comm.'s note to 2018 amendment.

## ARGUMENT

Movants do not provide information sufficient to determine whether the proposed settlement is fair, reasonable and adequate, particularly insofar as they fail to justify to counsel, the Court or the Settlement Class the extent to which the facts underlying the settlement—especially as concerns Class size—deviate from the allegations in the current Complaints. Based on the limited information set forth in the Motion and the supporting exhibits, however, the proposed settlement appears both procedurally and substantively unfair and inadequate: the

---

[4] In *Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983), the Fifth Circuit created a six-factor test (the "*Reed* Test") to evaluate proposed settlements at preliminary approval. The factors are: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Id.* at 172. The *Reed* Test predates the 2018 amendments to the Rule 23(e) regarding preliminary approval of class settlements. However, there is significant overlap in the *Reed* Test factors and Rule 23(e).

6

proposed settlement is woefully inadequate, particularly compared to approved settlements in similar data breach actions, and treats similarly situated Class members differently without adequate justification. The Court should, at a minimum, deny preliminary approval and require that Movants and Dickey's provide the undersigned and California counsel with all documents and information needed to fully and fairly evaluate the proposed settlement.

**A.    The Proposed Settlement Agreement is Procedurally Inadequate**

The procedural elements of Rule 23(e) focus on whether the Class was adequately represented and the settlement was negotiated at arms' length. *See* Fed. R. Civ. P. 23(e)(A)-(B). Courts consider several elements to determine if a proposed settlement is procedurally fair, reasonable, and adequate, including:

> (1) the amount of adversarial litigation preceding the proposed settlement agreement; (2) the nature and amount of discovery conducted before the proposed settlement agreement; (3) the conduct of the negotiations, such as the involvement of a neutral mediator; and (4) the award of attorney's fees, including the manner of negotiating the fee.

*Lusk v. Five Guys Enterprises LLC*, No. 17-cv-762, 2020 WL 7390478, *4 (E.D. Cal. Oct. 19, 2020). These factors weight heavily against preliminary approval of the proposed settlement and raise questions about the settlement's adequacy.

First, no adversarial litigation—at least involving Dickey's—occurred prior to Dickey's and its plaintiffs' counsel of choice agreeing to a Class-wide settlement. Dickey's filed motions to dismiss in some, but not all, of the related actions, but none were fully briefed by the plaintiffs in this Court or decided by the Court. The only issues that were fully briefed were organizational matters, such as the motion before the JPML, motions to consolidate, and motions to appoint interim leadership. Movants and Dickey's had yet to engage in adversarial litigation and the pending lead counsel motions had not yet been decided.

Second, no formal discovery has occurred to date.[5] Movants assert they engaged in targeted confirmatory discovery and a "pre-mediation exchange of information," vaguely described as "key documents from Dickey's, including the forensic report of the [Data Breach][,]" Motion, p. 18, all of which took place during the span of a month and in secret. *See* Declaration of Benjamin F. Johns, Exhibit 3 to Motion, ¶ 8 (stating that the parties began discussing settlement in mid-May 2021). But Movants did not share this discovery with the *Jeary* Plaintiffs, counsel in the California cases, or the Court.

The dearth of information supporting the settlement lies at the heart of many of the *Jeary* Plaintiffs' objections to the proposed settlement. Both the Motion and proposed settlement agreement are devoid of facts needed to evaluate the settlement, particularly to the extent the settlement and Motion diverge from the facts as publicly reported and alleged in the current Complaints. Neither counsel nor the Court can effectively determine whether the settlement is fair, reasonable, and adequate without the basic information Movants and Dickey's have yet to provide. Most importantly, neither can Class members who, without the benefit of an adequate factual record and a consolidated complaint reflecting evidence gathered to date, cannot evaluate the strengths and weaknesses of the settlement. *See In re Wendy's Co.*, No. 16-cv-1153, 2018 WL 6605394, *3 (S.D. Ohio Dec. 17, 2018) (denying the motion for preliminary approval as premature when multiple operative complaints were pending before the court, as a single operative complaint will assist class members and the court in evaluating the agreement).

The third factor, the conduct of the negotiations, also counsels against approval. Movants and Dickey's left both the undersigned and counsel in the California cases in the dark regarding all settlement negotiations and appear to have agreed to an inadequate settlement to quickly resolve

---

[5] For example, the parties have not even exchanged Rule 26(a) initial disclosures.

8

the actions. Movants' conduct and "the lack of communication . . . should not be rewarded." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 387-88 (D. Minn. 2013) (denying approval of the proposed settlement where defense counsel "cherrypick[ed] the attorneys willing to accept the lowest class recovery" and where counsel failed to inform counsel for plaintiffs in related actions that settlement discussions were ongoing) (quoting Manual for Complex Litigation § 21.61).

Indeed, it is impossible to evaluate the settlement without considering the circumstances under which it was reached. Movants previously claimed they would work cooperatively with other counsel, *see* ECF 36, while Dickey's opposed *any* interim appointment on grounds it was unnecessary because the various plaintiffs firm could work cooperatively. *See* ECF 46, 58. Yet, in a complete about face, Movants and Dickey's then set about planning and conducting a clandestine mediation, without providing informal discovery to or in any way involving the dozens of other Plaintiffs whom a settlement would impact or their chosen counsel (let alone involving them in discussions), all to reach a settlement that allocates almost as much to fees and administrative expenses as it does compensating the Class. The *Jeary* Plaintiffs do not (and apparently cannot) know what transpired leading up to and during the mediation, but the specter of collusion is real and cannot be ignored.

The fourth factor, the attorneys' fees agreement and the manner in which it was reached, likewise weighs against approval. Under the proposed agreement, fees will be deducted from a settlement fund that already appears insufficient. *See infra*. The proposed fee agreement also is inconsistent with typical practices in point-of-sale data breach cases, where attorneys' fees and expenses are paid separate and apart from funds allocated to the Class. *See infra.*

Because *none* of the procedural factors weighs in favor of preliminary approval, the Court should deny preliminary approval on that basis alone and require that Movants and Dickey's

provide the undersigned and California attorneys with the information relied on to negotiate the proposed settlement, as well any other information required to properly evaluate the proposal and determine the next best steps.

**B.   The Proposed Settlement Agreement also is Substantively Inadequate**

In addition to the procedural factors, Rule 23(e) requires the Court to examine the substance of the proposed settlement at the preliminary approval stage. Fed. R. Civ. P. 23(e)(2)(C)-(D). Courts consider a multitude of factors, including:

> (1) the amount of the settlement in light of the class's potential recovery, discounted by the costs, risks, and delay of trial and appeal; (2) the extent to which the parties have engaged in sufficient discovery to evaluate the merits of the case; (3) the complexity and potential costs of trial; (4) the recommendations of experienced counsel; (5) unreasonably high attorney's fees as well as timing of attorney's fees; (6) unduly preferential treatment of class representatives; (7) deficient notice plan; (8) the effectiveness and burdensomeness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (9) plainly unfair allocation scheme; and (10) overly-broad releases of liability.

*Lusk*, 2020 WL 7390478, *4. The proposed settlement, when considered in the context of the above factors, appears substantively unfair, unreasonable and inadequate.

Movants tout the proposed settlement as providing $2.35 million for Class members harmed by the Data Breach. However, the agreement first requires that attorneys' fees, expenses, service awards, and the notice and administration costs be deducted from the fund; the proposed settlement thus makes less than $1.19 million[6] available to Class members. As a result, while Movants contend the settlement provides $100 to each affected California resident (and $50, for non-California Class members), it is highly unlikely that Class members will receive anywhere near those amounts. In fact, even assuming the Class truly consists of only 725,000 individuals

---

[6] Should Movants request reimbursement of expenses on top of their request for attorneys' fees—which is likely—the amount for Class members will be less than $1.19 million.

rather than the more than three million Class members alleged in *every* Complaint filed to date,[7] the settlement will provide only $1.64 to each victim of the Breach. Even assuming only 10% of the proposed Class claims into the settlement, the per-claimant recovery still is a meager $16.40. That figure is reduced even further—to $3.90 per Class member—if the Class actually consists of three million individuals. Class members' likely recoveries simply are "far too low." *See Parsons v. Kimpton Hotel & Rest. Grp., LLC*, No. 16-cv-5387, 2018 WL 4441268, *1 (N.D. Cal. Sept. 13, 2018) (denying preliminary approval of a settlement that provided $15 per hour for time spent protecting against identity theft) (emphasis in original). Moreover, the above estimates may *overestimate* recoveries given that any claims for out-of-pocket losses made under the first relief option will necessarily reduce the recoveries of claimants who seek a simple cash payment.[8] The proposed settlement is grossly unfair and inadequate.

The second and third factors also do not support approval. As previously explained, neither the Court nor the Class can evaluate whether sufficient discovery was undertaken or whether a trial would be complex because Movants provide no detail regarding the substance of the discovery that informed the settlement.

The fifth factor, the amount and timing of fees, also cuts against approval. Movants and Dickey's agreed that attorneys' fees, expenses, service awards, and costs for notice and administration would be paid from the settlement fund. While that may be appropriate in some cases, it is not the norm in point-of-sale data breach class actions, including those in which Movants' counsel have been involved. In the Motion, Movants tout their experience in point-of-

---

[7] *See e.g.*, *Kostka* First Amended Class Action Complaint, ¶ 93, ECF 15; *Jeary* Complaint, ¶ 81, ECF 1.

[8] The settlement agreement is silent on whether the costs for credit monitoring will be deducted from the Settlement Fund, which will further reduce the amount for Class members, or if the cost for credit monitoring services are separate and apart from the settlement amount.

11

sale data breach cases, such as *Purdue v. Hy-Vee, Inc.*, No. 19-cv-1330 (C.D. Fla.); *In re: Wawa, Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa.); *Gordon v. Chipotle Mexican Grill, Inc.*, 17-cv-1415 (D. Colo.); *Bray v. GameStop Corp.*, 17-cv-1365 (D. Del.); and *In re: The Home Depot, Inc., Customer Data Security Breach Litig.*, 14-md-2583 (N.D. Ga.). But in each of those cases, like many other point-of-sale data breach actions, the attorneys' fees, expenses, awards, and costs were paid by the defendants separate and apart from the funds for class members.[9] Here, Movants rejected the norm and their own prior practice, and agreed to take their fees, in addition to the costs for notice and administration, from the settlement fund, thereby reducing the funds available for Class members. Such a scheme is unfair and unreasonable, particularly in light of concerns regarding self-dealing and collusion that are ever-present when a subset of plaintiffs' and their counsel approach a defendant and a settlement agreement is reached while lead counsel motions are pending.

The six and ninth factors are not met because the proposed settlement treats Class members differently, without an adequate justification. Under the proposed settlement, California residents will receive twice the amount that non-California residents receive despite the fact all Class members' personal and financial information were exposed in the exact same way, and all face the same increased risk of identity theft. Movants claim that the reason for the unequal treatment is

---

[9] *See Hy-Vee*, 2021 WL 3081051, *2 (C. D. Ill. July 21, 2021) (granting final approval to a claims-made settlement where fees and costs are separate from class members' recovery); *In re: Wawa*, 2021 WL 3276148, *6, 12 (E.D. Pa. July 30, 2021) (noting that the payment of attorneys' fees, class representative awards, and administrative fees are separate from the class members' recovery); *Chipotle*, Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Final Approval of Class Action Settlement, No. 17-cv-1415, ECF 123 at *6 (D. Colo.) (stating that the payment of notice and administration costs, service awards, and attorneys' fees, costs, and expenses are "[s]eparate from any payment to Class Members"); *GameStop*, Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of the Class Action Settlement, No. 17-cv-1365, ECF 50 at *3 (D. Del.) (stating that the defendant will pay notice and administration costs in "addition and separate from any payment to Class Members"); *In re: Home Depot*, 2017 WL 9605208, *1 (N.D. Ga. Aug. 1, 2017) (stating that the requested attorneys' fees "will be paid separately by Home Depot, and will not diminish any benefit provided under the Settlement Agreement").

because the claims of California residents are stronger due to the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, *et seq.* But they do not explain *why* the CCPA is a stronger cause of action. Other than providing for statutory damages, it is substantially similar to many other state data breach statutes. *See Jeary* Complaint, ¶¶ 138-145 (Count V – Violation of State Data Breach Statutes). Moreover, the CCPA applies only to half of the Data Breach. *See Gardiner v. Walmart Inc.*, No. 20-cv-4618, 2021 WL 2520103, *2 (N.D. Cal. Mar. 5, 2021) (holding that the CCPA applies only to data breaches that occurred after January 1, 2020). Because the proposed settlement treats similarly situated Class members differently without an adequate justification, it is fundamentally unfair.

The seventh factor, the notice plan, also militates against approval because Movants fail to establish that the notice plan provides the best notice practicable under the circumstances. Under the proposed notice plan, email notice will be provided to only "a subset of potential Settlement Class members." Declaration of Cameron R. Azari, Esq. on Notice Plan and Notices, Exhibit 5 to the Motion, ¶ 18. No further information is provided regarding why only a subset will receive email notice, how many Class members will receive email notice, or how Dickey's determined which email addresses are associated with Class members. Without that information, it is impossible to determine if the notice plan is adequate.

Moreover, as with the attorneys' fees, deducting the costs for notice and administration of the settlement from the fund renders the settlement inadequate. Movants estimate notice and administration costs of $363,000. That is 15.5% of the entire settlement fund, and 23% of the fund after attorneys' fees are deducted. In the prior point-of-sale data breach cases in which Movants were involved, *see supra*, defendants separately paid for notice and administration in order to preserve settlement funds for Class members. By agreeing to pay for notice and administration

from the same miniscule $2.35 million fund, Movants appear to have failed to protect the interests of the Class. The proposed settlement is, therefore, unfair, unreasonable and inadequate.

## CONCLUSION

Movants represented to the Court that they would work cooperatively with other firms. Instead, they approached and negotiated in secret with Dickey's to reach an agreement that would provide victims of the Data Breach inadequate relief. And they did this to preempt the Court's power to appoint lead counsel and allowed Dickey's to negotiate a settlement with its counsel of choice, all while failing to provide the Class and this Court with information sufficient to assess the proposed settlement.

Based on the limited facts set forth in the Motion and the attachments thereto, the proposed settlement appears both procedurally and substantively deficient. Movants obtained extremely limited discovery and hurriedly negotiated a settlement in secret that excludes more than three quarters of the Data Breach's alleged victims and provides little actual relief to 725,000 for which they have accounted. By agreeing to deduct the fees, expenses, awards, and costs from the settlement fund—contrary to the norm for point-of-sale data breach actions—Movants leave little to make victims whole. Moreover, the proposed settlement treats Class members unequally, without providing a factual basis for doing so.

Simply put, the proposed settlement is fundamentally unfair, unreasonable, and inadequate. The Court should reject the proposed settlement and require that Movants and Dickey's provide the undersigned and California counsel with additional documents and information, including the informal discovery and documents provided by Dickey's to Movants, so that counsel can fully evaluate the proposed settlement and join in determining next best steps.

Dated: August 25, 2021

Respectfully submitted,

By: */s/ Andrew K. York*

    Bryan L. Clobes (admitted *pro hac vice*)
    State Bar No. 68151
    **CAFFERTY CLOBES MERIWETHER**
    **& SPRENGEL LLP**
    205 N Monroe St.
    Media, Pennsylvania  19063
    Telephone:  (215) 864-2800
    Facsimile:  (215) 964-2808
    bclobes@caffertyclobes.com

    Daniel O. Herrera (admitted *pro hac vice*)
    Nickolas J. Hagman (admitted *pro hac vice*)
    **CAFFERTY CLOBES MERIWETHER**
    **& SPRENGEL LLP**
    150 S. Wacker, Suite 3000
    Chicago, Illinois  60606
    Telephone:  (312) 782-4880
    Facsimile:  (312) 782-4485
    dherrera@caffertyclobes.com
    nhagman@caffertyclobes.com

    William B. Chaney
    State Bar No. 04108500
    Andrew K. York
    State Bar No. 24051554
    Jim Moseley
    State Bar No. 14569100
    **GRAY REED**
    1601 Elm Street, Suite 4600
    Dallas, Texas  75201
    Telephone:  (214) 954-4135
    Facsimile:  (214) 953-1332
    wchaney@grayreed.com
    dyork@grayreed.com
    jmoseley@grayreed.com

    ***Attorneys for Plaintiffs Tammy Jeary, Gabrielle McGuire, and Jennifer Roy***

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 25th day of August, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF registrant(s) who have entered an appearance in this case.

                                                     */s/ Andrew K. York*
                                                     ANDREW K. YORK