**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| DEMI KOSTKA, *et al.*, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br>v.<br><br>DICKEY'S BARBECUE RESTAURANTS, INC., *et al.*,<br><br>                        Defendants. | No. 3:20-cv-3424-K<br><br>Hon. Ed Kinkeade<br><br>**Consolidated with:**<br><br>Civil Action No. 3:20-cv-3603-K<br>Civil Action No. 3:21-cv-0137-K<br>Civil Action No. 3:21-cv-0769-K |

**PROPOSED REPRESENTATIVE PLAINTIFFS' REPLY IN SUPPORT OF MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs Vincent Jear, Demi Kostka, Latorsha Adams, Lashawn Parker, Veronica Snyder, and Robert Stroman ("Proposed Representative Plaintiffs"), by and through the undersigned counsel, submit this Reply in Support of Motion for Preliminary Approval of Class Settlement.

The Proposed Settlement provides excellent relief that compares favorably to other data breach settlements involving similar facts and claims. Rather than objecting to the merits of the Settlement by identifying structural defects in the Settlement (there are none) or comparing the substantive relief to settlements reached in comparable cases, Objector Counsel's Objection (ECF No. 65, hereinafter "Oppo.") largely turns on an impractical legal rule that does not exist: that class settlement negotiations must include counsel from all pending cases.

Proposed Co-Lead Class Counsel attempted to work together with Objector Counsel from an early stage in this litigation. Unfortunately, those efforts were unproductive. However, Proposed Co-Lead Class Counsel were successful in coordinating among counsel in three separate cases (*Kostka, Adams, Stroman*) and negotiating an excellent Settlement with the assistance of a highly experienced mediator that provides meaningful and timely relief to members of the Proposed Settlement Class.

The objections raised by Objector Counsel are without merit and should be overruled.

## I.      The Benefits of the Settlement Are Excellent

Objector Counsel devote exactly one paragraph of their fourteen-page Objection to a discussion of the class recovery provided by the Settlement. Oppo., p. 10. This is for good reason—the benefits provided by the Settlement are excellent and compare favorably to other payment card breach settlements, as shown below. Objector Counsel cite a single case—*Parsons v. Kimpton Hotel & Rest. Grp., LLC*, No. 16-cv-5387, 2018 WL 4441268, *1 (N.D. Cal. Sept. 13, 2018)—for the proposition that the class recovery provided by the Settlement is inadequate. However, if

Objector Counsel had reviewed subsequent developments in that case, they would have seen that *Kimpton* strongly supports the adequacy of the Settlement. The settlement that was approved as fair, reasonable, and adequate in *Kimpton* provided monetary benefits capped at a maximum of $600,000 for 600,000 estimated class members. *See Kimpton Hotel & Rest. Grp., LLC*, No. 16-cv-5387, ECF No. 106 at 16. Here, by contrast, the Settlement is significantly more valuable on a per class member basis. Objector Counsel's citation to *Kimpton* is inexplicable and challenges good faith.

## A. The Settlement Compares Favorably to Other Data Breach Cases

When compared to the benefits provided by other finally approved payment card breach settlements, the Settlement provides exemplary relief. Proposed Co-Lead Class Counsel drew on their vast collective expertise and experience in similar cases to inform the negotiations in this case and reach this excellent result. Proposed Co-Lead Class Counsel conservatively estimate the class size at 725,000. Dickey's estimates that the data breach impacted an estimated 662,388 payment cards. Declaration of Carissa De Santis, ¶ 13, attached as Exhibit 2. The Settlement Fund established by the Settlement will provide $2,350,000—a recovery of $3.24 per class member. As demonstrated in the chart below, this recovery is outstanding when compared to the per class member recovery in comparable data breach cases.

| Case Title | No. of Class Members | Settlement Fund and Attorneys' Fees | Amount Per Class Member | Credit Monitoring |
|---|---|---|---|---|
| *In re Target Corp. Customer Data Breach Security Litigation* | 97.6M | $16.75M | $0.17 | Documented Cost Reimbursement |
| *In re The Home Depot Inc. Customer Data Security Breach Litig.* | 40M | $21.5M | $0.54 | 18 Months |
| *Atkinson, et al. v. Minted, Inc.* | 4.1M | $5M | $1.22 | 2 years |

| | | | | |
|---|---|---|---|---|
| *In re Equifax Inc. Data Security Breach Litigation* | >147M | $380.5M | $2.59 | 4 years |
| *Kostka v. Dickey's Barbecue Restaurants, Inc.* | 725,000 | $2.35M | $3.24 | 2 years |

**B. The Settlement Accounts for the Relative Value of CCPA Claims**

California Class Members are given the opportunity to receive greater benefits than residents of other states because of the statutory damages provided by the California Consumer Privacy Act ("CCPA"). The CCPA provides statutory damages between $100 and $750 for failure to implement and maintain reasonable security procedures and practices. Cal. Civ. Code § 1798.150(a)(1)(A). Objector Counsel's statement that "[o]ther than providing for statutory damages, it is substantially similar to many other state data breach statutes" simply breezes past the significance of these statutory damages without any analysis at all. Oppo. at 13. Recognizing the significant value of claims providing statutory damages in the structure of a data breach settlement is not new. *See e.g. In re Premera Blue Cross Customer Data Security Breach Litig.*, (D. Or.) Case No. 3:15-md-2633-SI, Pls.' Motion for Final App. 30, ECF No. 281.

**C. The Settlement Was Negotiated with the Assistance of an Experienced Mediator**

The fact that Proposed Co-Lead Counsel and Dickey's Counsel negotiated the Settlement before a mediator is further evidence that the Settlement is fair, reasonable, and adequate. Courts routinely use the presence of a neutral mediator to aid in evaluating the fairness of a settlement in class action cases, especially to dispel any notions of collusion. *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, Civil Action No. 3:02-cv-1152-M, 2018 U.S. Dist. LEXIS 69143, at *18–19 (N.D. Tex. Apr. 25, 2018) (holding the presence of a neutral mediator "strongly suggests that the settlement is not the result of improper dealings"); *Izzio v. Century Golf Partners Mgmt., L.P.*, Civil Action No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946, at *18 (N.D. Tex. Feb. 13,

2019) (same); *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. 2011) (same).

Proposed Co-Lead Counsel engaged in a lengthy mediation with Dickey's Counsel on June 31, 2021, before the Honorable Judge Wayne R. Andersen (Ret.). Judge Andersen served as a U.S. District Judge for nearly 19 years, and a state court judge for seven years before that, and is highly experienced in resolving complex disputes. Judge Andersen declared that counsel on both sides "zealously represented the interests of their clients" and that "there was a significant amount of work that went into reaching the result that was achieved in this case for the benefit of Plaintiffs and the Class." Andersen Decl. ¶ 8, attached as Exhibit 1. Further, Judge Andersen declared, "I believe the parties reached a hard-fought and honest compromise." *Id*. Judge Andersen's oversight of the mediation and his representations that the Settlement constitutes a hard-fought and honest compromise also weigh against Objector Counsel's baseless accusations.

### D. Attorney Fees in Common Fund Cases Are Typically Calculated as a Percentage

Objector Counsel argue the Settlement violates a "norm" by having attorney fees awarded as a percent of the fund. Of the five data breach cases Objector Counsel cite in favor of this proposition, only one of the involved settlements provided a common fund. The "norm" promoted by Objector Counsel is exactly the opposite of the well-established norm, which is to calculate fees as a percent of the class recovery in common fund cases. The percent of fund approach to attorney fees is well-established and supported by decades of precedent. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 645 (5th Cir. 2012) (upholding the award of attorneys' fees through a common fund in a class action); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010) (stating that "[t]he use of a common fund to pay attorney's fees in class action settlements is well established" and awarding fees as a percentage of the common fund); *In re*

*Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1071 (S.D. Tex. 2012) (awarding attorneys' fees as a percentage of the common fund in a data breach case); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D. La. 1997) (stating that in class action settlements "it is long settled that the attorneys … are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorneys' fees"). It is hard to attribute a good faith belief to the Objector Counsel's position. In any event, Objector Counsel will have the opportunity (as will every Class Member) to lodge an objection in the normal course of litigation after Plaintiffs' counsel have filed their motion for attorneys' fees.

## II. Class Settlements Do Not Require the Participation or Support of All Counsel

Proposed Co-lead Class Counsel are cognizant of the benefits of plaintiffs' counsel presenting a unified front and combining forces in litigation or settlement. Unfortunately, it is not always either practical or desirable to do so. In this case, efforts to collaborate with Objector Counsel failed. This does not diminish the excellent result that was reached by Proposed Co-Lead Class Counsel, who collectively presented, without a doubt, the most formidable group of data breach litigators involved in the litigation against Dickey's and were able to obtain an excellent result for the class. The idea that all counsel must be included would unjustly empower those who make unreasonable demands. To do so would allow the overreaching and less-qualified to encumber litigation with inefficiency, at a minimum. All counsel were invited to participate in the cooperative prosecution of the case, but because some chose not to does not diminish the efforts Proposed Co-Lead Class Counsel undertook to secure favorable relief for the Proposed Settlement Class.

## A. Efforts to Collaborate with Objector Counsel Failed

Objector Counsel variously describe the mediation that occurred as "secret," "surreptitious," and "clandestine." ECF. No. 65. Of course, sensitive settlement negotiations are justifiably confidential. Their objection concerns instead the fact that they chose not to be involved. While organizing the group that came to include counsel from *Kostka, Adams,* and *Stroman*, Proposed Co-Lead Class Counsel reached out to Objector Counsel about the possibility of working together.

When Plaintiffs in the *Diczhazy* case filed a motion to transfer the Dickey's actions to the Southern District of California pursuant to 28 U.S.C. § 1407, Proposed Co-Lead Class Counsel timely opposed that motion and argued against transfer. Johns Decl. ¶ 3, 8 attached as Exhibit 3. Roughly one month later, *Jeary* Plaintiffs filed a late opposition and an intent to present oral argument, which was denied by the JPML. Johns Decl. ¶ 6-7.

On or around February 19, 2021, Benjamin F. Johns was contacted by one of the attorneys representing *Jeary* Plaintiffs. While the communications were cordial, several factors made it impracticable to extend an additional leadership spot to a fourth firm, including the chronology of the cases on file and the work already performed in them, the number of firms involved in the various cases, and relevant experience among those firms in leading and settling consumer data breach cases. Johns Decl. ¶ 10-11. On March 11, 2021, Ben Barnow sent an email to counsel for the *Jeary* Plaintiffs which relayed the proposed three lawyer lead counsel structure, but which also stated "we certainly would be pleased to see you and your firm work cooperatively with us and support our group." Johns Decl. ¶ 12. Unfortunately, *Jeary* Plaintiffs did not follow-up on this invitation, and filed their own motion seeking to be appointed lead counsel on March 30. *See id.* at ¶ 13.

That Proposed Co-Lead Class Counsel were able to build consensus from counsel representing plaintiffs in three separate cases against Dickey's and eight highly qualified law firms is an achievement that demonstrates their inclusive approach. Under the circumstances, collaboration with counsel from *Jeary* or *Diczhazy* was neither practicable nor in the interests of the putative class.

## B. Class Settlements Do Not Require the Support of All Counsel

Courts routinely approve settlements over similar objections. *See, e.g., Baker v. ABC Phones of N.C.*, 2020 U.S. Dist. LEXIS 240695, *26 (W.D. Tenn. Dec. 22, 2020) ("If concrete evidence were not required, all settlements of competing cases where there are multiple collective actions would be derailed by accusations of reverse auction."); *Swinton v. Squaretrade, Inc.*, 454 F. Supp. 3d 848, 877 (S.D. Iowa 2020) ("However, this case lacks the qualities of a reverse auction . . . "); *Harvey v. Morgan Stanley Smith Barney LLC*, 2019 U.S. Dist. LEXIS 159258, *4-5 (N.D. Cal. Sept. 5, 2019) (quoting *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008) ("That a defendant is simply discussing settlement with the plaintiffs in parallel proceedings is insufficient to establish that an impermissible 'reverse auction' has occurred because it 'would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'")); *Salmonson v. Bed Bath & Beyond, Inc.*, 2012 U.S. Dist. LEXIS 199384, *12-13 (N.D. Cal. Apr. 27, 2012) (same); *see also Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F. Supp. 2d 432, 433-434 (D.N.J. 2011) (after approving settlement entered into by one of two law firms with pending cases, the court awarded attorneys' fees only to the law firm that settled the case).

The *Jeary* Plaintiffs rely on an opinion from the District of Minnesota for the notion that, because they and the California plaintiffs' counsel did not participate in the mediation, it "appear[s]" Proposed Co-Lead Class Counsel "have agreed to an inadequate settlement…" Oppo. at 8-9 (citing *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 381 (D. Minn. 2013)). That case is inapposite. Martin filed an action in Minnesota state court and then quickly voluntarily dismissed it. *Id.* at 381-82. In the interim, a second case was filed by different counsel in the District of Hawaii. *Id.* Martin then reached a proposed nationwide class action settlement, and re-filed her case in the District of Minnesota for the purpose of securing preliminary approval. *Id.* at 383. The Hawaii plaintiffs were not advised of this settlement in advance. *Id.* Significantly, Cargill's motion to stay that it filed in the Hawaii action, based upon the proposed nationwide settlement in Minnesota, was denied by that court. *Id.* at 387. The *Martin* Court noted that this fact made its concerns about the settlement "particularly acute," and further stated that this development created a "very real" risk "of duplicated effort, wasted resources, and inconsistent results…" *Id.* at 389. Under these circumstances, the district court in Minnesota declined to grant preliminary approval to the settlement.[1] *Id.*

In contrast to *Cargill*—where the Hawaii court refused to stay the case in light of the proposed settlement in the District of Minnesota—the Southern District of California (the only venue aside from this one where related cases against Dickey's were still pending) promptly *granted* Dickey's motion to transfer that action to this Court upon being advised of the settlement.

---

[1] The district court raised other substantive infirmities with the Proposed Settlement (i.e., the parties failed to provide sufficient information to estimate the value of class members' claims, and have "provided nothing but generalities about the relative strengths and weaknesses" of their claims). *Id.* at 384-86. Proposed Co-Lead Class Counsel here have provided this information in their moving papers. *See* Mem. at 6, n.2 (setting forth the range of potential recoverable damages under the Cal. Civ. Code § 1798.150); *id.* at 13-15 (describing the risks this case faced in further litigation); *id.* at 20 (identifying the estimated number of class members).

*See Diczhazy v. Dickey's Barbeque Restaurants, Inc.,* No. 3:20-cv-2189-L-MDD, ECF No. 27-1 (S.D. Cal. Aug. 20, 2021). There is no risk of duplicative cases or inconsistent rulings here. And while the *Martin* court also expressed concerns about the possibility of there being a "reverse auction" based on the conduct in that case, *see id.* at 387-88, this observation presents no basis for declining to grant preliminary approval here. A reverse auction is said to occur when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). The exact opposite happened here: the Proposed Settlement was reached by the most highly experienced class lawyers involved in the litigation against Dickey's, including counsel in the first-filed case, *Stroman.*

### C. Plaintiffs' Motion for Preliminary Approval Clearly Provides Sufficient Information to Evaluate the Settlement

Objector Counsel's demand for discovery into the process by which the Settlement was reached is an attempt to reinsert themselves in a settlement process they were not a part of due to their own intransigence regarding leadership. The Motion for Preliminary Approval provides ample information to evaluate the Settlement. Indeed, the benefits of the Settlement stand up to similar payment card data breach settlements, as shown above.

### D. The Notice Plan is Adequate

Objector Counsel additionally challenges the adequacy of the notice plan developed by notice expert Cameron R. Azari at Epiq. Their only contention with the notice plan is that the email notice will only be sent to a subset of Class Members and that Proposed Co-Lead Class Counsel do not explain why only a subset will receive email notice. Oppo. at 13 (citing Decl. of Cameron R. Azari, Esq., ECF No. 62, Ex. 5 ¶ 18). Objector Counsel's argument here is answered by reading

the full context of Mr. Azari's declaration, including the paragraph following the one that Objector Counsel cites to in their opposition. That paragraph begins, "The Summary Notice will be sent via email to all potential Settlement Class Members from the list provided by Defendants for whom a facially valid email address is available." Decl. of Cameron R. Azari, Esq., ECF No. 62, Ex. 5 ¶ 19. A plain reading of this statement reveals that all Class members whom Dickey's can provide a facially valid email address for will receive notice. The Settlement Administrator will attempt to reach all other Class members through a number of other means. In addition to the email notice, the notice plan includes targeted internet banner advertising, sponsored search listings, and an informational release. These notices will point to a settlement website which will have detailed information on the settlement, a toll-free number which Class members can call to obtain additional information, and a postal mailing address that Class members will be able to send correspondence to and which the Settlement Administrator will answer. The Notice Plan is detailed and the best notice practicable under the circumstances. The proposed notice provider and claims administrator, Epiq, is widely regarded as one of the best, with decades of experience in class action settlements.

## CONCLUSION

Accordingly, Objector Counsel's objection is both premature and meritless. The Objectors point to no flaw that would justify denying preliminary approval to, by any relevant comparison, an excellent settlement. The Motion for Preliminary Approval should be granted.

Dated: September 8, 2021                     Respectfully submitted,

                                             /s/ Ben Barnow
                                             Ben Barnow (pro hac vice)
                                             Anthony L. Parkhill (pro hac vice)
                                             **BARNOW AND ASSOCIATES, P.C.**

205 W. Randolph St., Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
apakhill@barnowlaw.com

Benjamin F. Johns (pro hac vice)
Samantha E. Holbrook (pro hac vice)
Alex M. Kashurba (pro hac vice)
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
(610) 642-8500
bfj@chimicles.com
seh@chimicles.com
amk@chimicles.com

John A. Yanchunis
Ryan J. McGee
Francesca Kester
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Group, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Facsimile: (813) 223-5405
jyanchunis@forthepeople.com
rmcgee@forthepeople.com
fkester@forthepeople.com

Cory S. Fein (State Bar No. 06879450)
**CORY FEIN LAW FIRM**
712 Main Street, Suite 800
Houston, TX 77002
Tel.: (281) 254-7717
Fax: (530) 748-0601
cory@corfeinlaw.com

Bruce W. Steckler
State Bar No. 00785039
Austin P. Smith
State Bar No. 24102506
**Steckler Wayne Cochran Cherry, PLLC**
1270 Hillcrest Road, Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
Fax: 972-387-4041
bruce@swclaw.com
austin@swclaw.com

Paul D. Stickney
State Bar No. 00789924
12720 Hilcrest Road, Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
judgestick@gmail.com

Gary M. Klinger, Esq.
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 975-0477
Fax: (202) 429-2294
gklinger@masonllp.com

Brian P. Murray
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue Rm 530
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com

Paul C. Whalen
**LAW OFFICE OF PAUL C. WHALEN, P.C.**
61 Spray Falls Road
Haines Falls, NY 12436
Tel: (516) 426-6870
pcwhalen@protonmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2021, a copy of the foregoing was served electronically on all parties in this action via the ECF system.

By: */s/ Ben Barnow*

*Proposed Co-Lead Class Counsel*