IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEMI KOSTKA and VINCENT JEAR, | § | Case No. 3:20-cv-03424-K |
| *individually and on behalf of all others* | § | |
| *similarly situated*, | § | **Consolidated with:** |
| Plaintiffs, | § | |
| | § | |
| | § | Case No. 3:20-cv-03603-K |
| v. | § | Case No. 3:21-cv-00137-K |
| | § | Case No. 3:21-cv-00769-K |
| DICKEY'S BARBECUE | § | Case No. 3:21-cv-01962-K |
| RESTAURANTS, INC., | § | Case No. 3:21-cv-01963-K |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs Demi Kostka, Vincent Jear, Latorsha Adams, Robert Stroman, Veronica Snyder, and Lashawn Parker's (collectively, the Settling Plaintiffs) Motion for Preliminary Approval of Class Action Settlement (ECF No. 62). For the reasons explained in these Findings, Conclusions, and Recommendation, the District Court should GRANT the Motion in full.

## Background

This case arises from a highly publicized, malicious cyber-attack on Defendant Dickey's Barbecue Restaurants, Inc.'s (Dickey's) "computer servers and payment card environment." Mot. Appr. Settl. 8 (ECF No. 62). The Settling Plaintiffs allege that malevolent actors gained unauthorized access to Dickey's computer systems between April 2019 and October 2020 and stole "private and confidential financial information consisting of credit and debit card numbers, expiration dates, cardholder names, internal card verification codes, and other

1

payment card information" for hundreds of thousands of Dickey's consumers. *Id.* The hackers then advertised the stolen information for sale on the Dark Web. *Id.*

The Settling Plaintiffs filed this case against Dickey's on July 30, 2021, alleging claims for negligence, negligence per se, breach of implied contract, violations of the California Consumer Privacy Act and the California Unfair Competition Law, and unjust enrichment, and seeking class action certification for a nationwide class, a California subclass, and a Florida subclass. *See generally* Compl. (ECF No. 1); Am. Compl. (ECF No. 15). Around the same time, several other individuals brought similar class action suits against Dickey's and related entities, each of which was eventually consolidated with this case. *See Adams v. Dickey's Barbecue Rests., Inc.*, 3:20-cv-03603-K (N.D. Tex. Mar. 19, 2021); *Jeary v. Dickey's Barbecue Rests., Inc.*, 3:21-cv-00137-K (N.D. Tex. Mar. 19, 2021); *Stroman v. Dickey's Barbeque Rests., Inc.*, 3:21-cv-00769 (N.D. Tex. Apr. 14, 2021); *Diczhazy v. Dickey's Barbecue Rests., Inc.*, 3:21-cv-01962-K (N.D. Tex. Sept. 21, 2021); *Marhefka v. Dickey's Barbecue Rests., Inc.*, 3:21-cv-01963-K (N.D. Tex. Sept. 21, 2021). The allegations in each case are substantially similar—namely, that Dickey's failed to adequately safeguard customers' payment information, and, as a result, that information was compromised by third parties, resulting in damages for all who used a payment card at one of the affected Dickey's locations during the relevant period. *See, e.g.*, Am. Compl. ¶¶ 1-11.

Before the Court could take up the issue of class certification, the Settling Plaintiffs and Dickey's negotiated a settlement. Mot. Appr. Settl. 9-10. The

proposed settlement would apply to a settlement class defined as "[a]ll residents of the United States who used a payment card to make a purchase at [certain] 'Dickey's Barbecue Pit®' restaurant[s] . . . between April 23, 2019, and October 29, 2020," except for Dickey's and its officers or directors, anyone who opts out from the settlement, any person who has previously agreed to release related claims, and court personnel involved with the settlement fairness determination. *Id.* at 10. Ultimately, the proposed settlement would have Dickey's provide a "$2,350,000 all-cash, non-reversionary Qualified Settlement Fund in exchange for a release of all claims that were or could have been alleged in this case." *Id.* at 11. Class members would also be able to file claims for out-of-pocket losses, elect for a cash payment, and request credit monitoring services, while Dickey's would promise to adopt certain data-security measures. *Id.* at 11-13.

After the proposed settlement was finalized, the Settling Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement. The Motion asks the Court to (1) certify the proposed class for settlement; (2) preliminarily approve the settlement; (3) appoint Ben Barnow, Barnow and Associates, P.C.; Benjamin F. Johns, Chimicles Schwartz Kriner & Donaldson-Smith LLP; and John A. Yanchunis, Morgan & Morgan Complex Litigation Group as co-lead class counsel; (4) appoint Settling Plaintiffs Demi Kostka, Vincent Jear, Latorsha Adams, Robert Stroman, Veronica Snyder, and Lashawn Parker as representative plaintiffs; (5) appoint Epiq as the settlement administrator (6) approve the proposed notice plan; and (7) set a fairness hearing for final settlement approval and to consider

applications for attorneys' fees, service awards, and reimbursement. *Id*. at 7. While Dickey's does not oppose the Motion, the Plaintiffs in the *Jeary* case (the Objecting Plaintiffs) filed a Response (ECF No. 65) opposing the Motion, and the Settling Plaintiffs filed a Reply (ECF No. 69). The Court held a hearing on the Motion on August 8, 2022. Accordingly, the Motion is ripe for review.

## Legal Standard

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). To approve the settlement, a court must first determine whether the class should be preliminarily certified for settlement purposes. *Bridges v. Ridge Nat. Res., LLC*, 2020 WL 7495252, at *2 (W.D. Tex. Jan. 3, 2020) (citing *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426-27 (E.D. Tex. 2002)). A court should only preliminarily certify the class if it finds that it is likely to certify the class at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B). In making this finding, a court must determine if the proposed class meets both the four prerequisites of Rule 23(a) and one of three additional requirements in Rule 23(b). *See* Fed. R. Civ. P. 23; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (noting that class certification under 23(b)(3) requires two additional requirements). The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *In re Heartland Payment Sys. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012).

4

If a court preliminarily certifies the class, it then moves to the preliminary fairness evaluation. "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. To secure preliminary approval, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## Analysis

The Court first considers the threshold issue of standing, both for the Settling Plaintiffs and the proposed class's putative members. Then, the Court turns to the required Rule 23 certification analysis, and subsequently moves into the preliminary fairness inquiry. Finally, the Court considers the Settling Plaintiffs' remaining administrative requests.

I.   The Settling Plaintiffs and the proposed class's putative members have properly alleged an injury sufficient to confer Article III standing.

After the Settling Plaintiffs filed their Motion for Preliminary Approval, the District Court directed the Settling Plaintiffs to file supplemental briefing on the issue of Article III standing—specifically whether all potential class members have suffered a concrete injury. Order 2-4 (ECF No. 79). The Settling Plaintiffs filed a

Supplemental Brief (ECF No. 81), arguing that they and all potential class members have Article III standing, and the Court held a hearing where the Settling Plaintiffs also argued that all potential class members have standing. *See generally* Pls.' Suppl. Br. (ECF No. 81). Notably, neither Dickey's nor the Objecting Plaintiffs contest standing.

Before considering whether to certify a proposed class, a court must consider whether the proposed class representatives have Article III standing. *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020). "After all, if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Id.* (first citing *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) ("In the instant case, . . . the standing question would exist whether [the plaintiff] filed her claim alone or as part of a class; class certification did not create the jurisdictional issue."); and then citing *Ford v. NYLCare Health Plans*, 301 F.3d 329, 333 (5th Cir. 2002) (same)).

In addition, "[e]very class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citation omitted). However, it is unclear if courts should consider the Article III standing of potential class members, who are not yet before the court, at the certification stage. *TransUnion*, 141 S. Ct. at 2208 n.4 ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class."); *Flecha*, 946 F.3d at

6

768 ("Our court has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative."); *see also In re Deepwater Horizon*, 739 F.3d 790, 800-02 (5th Cir. 2014) (describing a split of circuit court authority on this issue). And, while Fifth Circuit authority indicates that courts should undertake a Rule 23 analysis before considering the separate issue of Article III standing for putative class members, *Flecha*, 946 F.3d at 768-69, the presence of a significant number of putative class members who lack Article III standing likely means the class definition is too broad and that the class should be rejected under Rule 23(b)(3)'s predominance requirement. *Earl v. Boeing Co.*, 339 F.R.D. 391, 414-15 (E.D. Tex. 2021) (citations omitted).

The "irreducible constitutional minimum of standing" includes three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43). Moreover,

each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

In determining whether a plaintiff has suffered a concrete and particularized injury, the Supreme Court has held "that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, (2016)). Indeed, to demonstrate that a plaintiff has suffered a concrete injury, a plaintiff must identify "a close historical or common-law analogue for their asserted injury." *Id*. Critically, this requirement cannot be met merely by appealing to a statutorily provided right to sue—for "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 2205 (citing *Spokeo*, 578 U.S. at 341).

Moreover, "the risk of future harm on its own does not support Article III standing for . . . [a] damages claim." *Id*. at 2213. In other words, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id*. at 2210-11. Accordingly, an "informational injury that causes no adverse effects cannot satisfy [the] Article III" concrete harm requirement. *Id*. at 2214 (citation and internal quotation marks omitted).

In the instant case, the parties settled at the pleading stage of the litigation. Accordingly, the Court only considers whether the Settling Plaintiffs have "plausibly alleged" the minimum requirements for Article III standing. *See Lujan*,

8

504 U.S. at 561 ("[Standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of litigation."); *see also Earl*, 339 F.R.D. at 412 (noting that at the class certification stage, "a named plaintiff may continue to demonstrate standing through allegations of a cognizable injury suffered as a result of the defendant's conduct"). In this case—based on a data breach resulting from an intentional and malicious hack of customer data retained by Dickey's—the Settling Plaintiffs have alleged several potential harms to serve as a basis for Article III standing. In their Supplemental Brief, the Settling Plaintiffs identify the "increased risk of future harm" due to the breach, "various errands" undertaken to mitigate this fraud risk, "actual fraud and unauthorized charges," and statutory authorization as potential concrete harms to satisfy Article III standing. Pls.' Suppl. Br. 6-16. Additionally, at the hearing, the Settling Plaintiffs relied on the argument that all potential class members suffered the concrete injury of breach of an implied contract.

The Court finds that the Settling Plaintiffs have properly alleged Article III standing for all potential class members on the basis of their breach-of-an-implied-contract claim. Under Fifth Circuit precedent, "[i]njuries to rights recognized at common law—property, contracts, and torts—have always been sufficient for standing purposes." *Servicios Azucareros de Venezuela, C.A. v. John Deere*

*Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012) (citations omitted).[1] Indeed, "a plaintiff who has produced facts indicating it was a party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." *K.A. by & Through B.W. v. Children's Mercy Hosp.*, 2019 WL 2144815, at *2 (W.D. Mo. May 16, 2019) (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)) (cleaned up).

While the Supplemental Brief does not raise this implied contract argument in the Article III context, the theory is apparent in the Amended Complaint filed by Settling Plaintiffs Kostka and Jear. The Settling Plaintiffs assert that:

> Plaintiffs and class members paid money to Dickey's and, in connection with those transactions, provided Dickey's with their Card Information. In exchange, Dickey's agreed, among other things: (1) to provide food, gasoline, and food services to Plaintiffs and class members at its various locations; (2) to take reasonable measures to protect the security and confidentiality of Plaintiffs' and class members' Card Information; and (3) to protect Plaintiffs' and class members' personal information in compliance with federal and state laws and regulations and industry standards.

---

[1] The Court notes that there is a significant amount of conflicting of out-of-circuit authority dealing with this theory of standing. Some courts have found that a mere breach of contract is a concrete harm for Article III purposes, while other courts have found the opposite. *See Dinerstein v. Google*, LLC, 484 F. Supp. 3d 561, 571 (N.D. Ill. 2020) (conducting an overview of authority from the Sixth, Seventh, Eighth, and Ninth Circuits); *Patel v. Univ. of Vt. & State Agric. Coll.*, 2021 WL 4523683, at *6 (D. Vt. Oct. 1, 2021) (holding that breach of contract alone is not a concrete harm for Article III standing purposes); *see also Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021) ("[S]imply being a party to the [breached] contract does not alone establish Article III standing."). However, in the Fifth Circuit, breach of contract remains a concrete harm for Article III standing purposes. *See Osherow as Tr. for Est. of Republic Res., LLC v. York*, 2019 WL 6048017, at *5 (W.D. Tex. Aug. 5, 2019).

Am. Compl. ¶ 129. In other words, the Settling Plaintiffs allege that, because the potential class members used payment cards, their purchase of goods and services from Dickey's also included an implied subsidiary promise that Dickey's would adequately protect their payment information. *See* Pls.' Suppl. Br. 18 (discussing this theory in the context of the Settling Plaintiffs' California statutory claims).

Critically, then, the Settling Plaintiffs have alleged a concrete harm attributable to all potential class members—namely, that Dickey's payment-card customers did not get the benefit of their bargain with respect to their implied data-security contracts with Dickey's.[2] Moreover, this harm—breach of contract—is one that has traditionally been a basis for asserting standing in federal court. *See Servicios*, 702 F.3d at 800 (citing Erwin Chemerinsky, Federal Jurisdiction § 2.3, at 67-68 (6th ed. 2012) (first citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008); then citing *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118 (1939); and then citing *Comer v. Murphy Oil USA*, 585 F.3d 855, 864 n.3 (5th Cir. 2009))). Accordingly, the Settling Plaintiffs have properly alleged a concrete harm for Article III purposes. And, while the Court may not be required to address

---

[2] The Court notes that some out-of-circuit courts have expressed skepticism of a breach of implied contract claim in data breach cases. *See, e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015); *see generally Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011). However, neither the Fifth Circuit nor the Supreme Court have considered this theory. And, at this procedural posture, the Court finds that the Settling Plaintiffs have at least plausibly alleged this breach of implied contract claim for purposes of demonstrating standing for a settlement class.

the Article III standing of putative class members at the certification juncture, the Court nevertheless notes that the Settling Plaintiffs have properly made this allegation for all potential class members. For, regardless of whether a putative class member was the victim of any actual fraud, according to the Settling Plaintiffs' allegations, that class member suffered the independent harm of breach of implied contract. *See* Am. Compl. ¶ 129.

In addition, the Settling Plaintiffs also readily meet the traceability and redressability requirements for Article III standing. They argue that their injury— the alleged breach of implied contract—is traceable to Dickey's failure to perform under the implied contract, and that their corresponding injuries may be redressed by actual damages from any economic losses resulting from the breach and potential equitable relief to prevent future harm. *See id.* ¶¶ 136-37. The Settling Plaintiffs have thus demonstrated that, at least at this preliminary procedural stage, both they and all potential members of the proposed settlement class have properly alleged standing.

II.    The District Court should preliminarily certify the settlement class because it meets the Rule 23(a) & (b) threshold requirements for certification.

Before certification, a proposed class must satisfy the four prerequisites of Rule 23(a): "numerosity, commonality, typicality, and adequacy of representation." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). Additionally, the Fifth Circuit has an "implied prerequisite" that the proposed class definition must make the members of the class readily ascertainable. *John v. Nat'l Sec. Fire & Cas.*

*Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Additionally, in a suit seeking class wide monetary damages, the class must satisfy Rule 23(b)(3)'s predominance and superiority elements in order to be certified. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005); Fed. R. Civ. P. 23(b)(3). Moreover, when "a class has not been certified before settlement," the Court must first "apply the Rule 23(a) class-certification factors with heightened scrutiny" to determine whether the class is likely to be certified for settlement purposes at the final approval stage. *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 767 (S.D. Tex. 2021) (citations omitted); *see also* Fed. R. Civ. P. 23(e)(1)(B).

> The four Rule 23(a) prerequisites for certifying a class are:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Meanwhile, Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Objecting Plaintiffs do not argue that the proposed class should not be certified. Accordingly, the Court considers the Settling Plaintiffs' arguments for each of these requirements in turn.

### A.    The proposed class is sufficiently numerous.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." All parties agree that the Settlement Class consists of at least 725,000 individuals. *See* Pls.' Suppl. Br. 26; Obj. Pls.' Resp. 13-14 (ECF No. 65). Therefore, the proposed class clearly contains too many members to be practicably joined, and the District Court should find that the numerosity requirement is met. *See, e.g.*, *Mullen*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that 100 to 150 members "is within the range that generally satisfies the numerosity requirement").

### B.    There are common questions of law and fact for all potential class members.

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359, (2011). "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d 620 at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)); *see also Almon v. Conduent Bus. Servs., LLC*, 2022 WL 902992, at *25 (W.D. Tex. Mar. 25, 2022) ("The threshold of commonality is not high."). "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to

14

drive the resolution of the litigation." *Flecha,* 946 F.3d at 767 (quoting *Wal-Mart,* 564 U.S. at 350).

However, these common answers "need not relate specifically to the damages component of the class members' claims . . . [and] the legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d at 810-811. In other words, these common answers need not relate to the injurious effects experienced by class members but may also relate to the defendant's injurious conduct. *See id.*; *see also In re Heartland*, 851 F. Supp. 2d at 1053 ("The focus in the settlement context should be on the conduct (or misconduct) of the defendant and the injury suffered as a consequence.").

In this case, there is sufficient commonality in the Settling Plaintiff's breach of implied contract claim to justify certification of this class for settlement purposes. Initially, the question of whether there was an implied contract— whether Dickey's promised to provide anything other than goods or services available in their restaurants—will be common to all potential class members. Additionally, the scope of this agreement—what data-security measures Dickey's promised to implement in this implied contract—will also be common to every individual class member's claim. Finally, whether Dickey's complied with its alleged promise to secure the class members' data will also be common to all potential claims. Moreover, other courts have routinely found commonality in

similar data breach cases. *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *3 (E.D. Pa. July 30, 2021*); In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *11-12 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part on other grounds*, 999 F.3d 1247 (11th Cir. 2021); *Cotter v. Checkers Drive-In Rests., Inc.*, 2021 WL 3773414, at *6 (M.D. Fla. Aug. 25, 2021). Accordingly, the District Court should find that the Settling Plaintiffs have sufficiently demonstrated that the proposed class satisfies the commonality requirement.

   C. *The Settling Plaintiffs' claims are typical of the proposed class's claims.*

  Rule 23(a)(3) requires "the claims or defenses of the representative parties" to be "typical of" the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where the class representatives' claims arise from a common course of conduct and are based on the similar legal theories of absent class members. *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 745 (E.D. Tex. 2007), *amended on other grounds*, 507 F.3d 295 (5th Cir. 2007). "[E]ven if there are factual distinctions between the claims of the named plaintiffs and those of other class members[,]" typicality may be met. *Bywaters v. United States*, 196 F.R.D. 458, 467 (E.D. Tex. 2000). Indeed, for the typicality requirement, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not

16

defeat typicality." *In re Heartland*, 851 F. Supp. 2d at 1054 (citing *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). As with commonality, the typicality standard "is not demanding." *Earl*, 339 F.R.D. at 419 (quoting *Mullen*, 186 F.3d at 625).

Here, the Settling Plaintiffs' claims center around a purportedly implied contract between the proposed class members and Dickey's—and the allegation that Dickey's breached this implied contract by failing to provide reasonable protections for their payment information. Thus, the singly identified data breach serves as the factual basis for the entire proposed class's claims, as well as the Settling Plaintiffs' claims. Moreover, given the commonalities identified above, the District Court should find that the Settling Plaintiffs have also satisfied the typicality requirement. *See M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013) ("Often, once commonality is shown typicality will follow as a matter of course.").

> D. *The Settling Plaintiffs and their counsel will fairly and adequately represent the proposed class.*

Rule 23(a)(4) requires the "representative parties" to "fairly and adequately" protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This adequacy requirement is satisfied where counsel for the class is qualified and competent to prosecute the action, and the interests of the proposed class representatives do not conflict with the interests of the class. *See Morrow v. Washington*, 277 F.R.D. 172, 195 (E.D. Tex. 2011). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those

differences create conflicts between the named plaintiffs' and the class members' interests." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 480 (5th Cir. 2001).

The Settling Plaintiffs have demonstrated themselves to be well-suited to represent the proposed class and no party proffers evidence of inadequacy. The proposed representatives' interests are aligned with the proposed class members— namely, establishing that Dickey's breached an implied contract and obtaining a remedy for that breach. Moreover, the Settling Plaintiffs' counsel has provided substantial evidence demonstrating that they are adequately suited to serve as class counsel in a data breach case such as this one. *See generally* Mot. Appr. Settl. Ex. 2-5 (ECF No. 62-2). Accordingly, the District Court should find that the Settling Plaintiffs and their counsel can adequately represent the proposed class's interests.

> E.   *All potential members of the class are readily ascertainable.*

In the Fifth Circuit, there is also an implied requirement under Rule 23 that the "class of persons to be represented by the class representative[s]" is "ascertainable." *John*, 501 F.3d at 445. Generally speaking, this requirement mandates that the putative class be "adequately defined." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam). Ultimately, "the touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation omitted).

In this case, the District Court should find that the proposed class meets the ascertainability requirement. Here, the Settling Plaintiffs and Dickey's agree that the class definition—all United States residents who used a payment card to make a purchase at certain Dickey's locations between April 23, 2019, and October 29, 2020—creates a readily ascertainable class. Specifically, Dickey's and the Settling Plaintiffs have set out the relevant Dickey's locations, and all that a potential class member need do to demonstrate that they are included in the class definition is show that they made a purchase at one of these locations using a payment card. See Mot. Appr. Settl. Ex. 1, at 37-40 (ECF No. 62-1). Accordingly, the District Court should find that putative class members are sufficiently ascertainable.

> ### F.    *Questions common to the class predominate over all other questions and a class action is the superior method to test the proposed class's claims.*

In cases such as this one, where the plaintiffs seek monetary damages, the proposed class must also satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance requirement "examines whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vaughn*, 627 F. Supp. 2d at 745-46 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance test is readily met in cases alleging consumer fraud.

*Amchem*, 521 U.S. at 625. "Where 'defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will ensure that funds are available' to compensate plaintiffs, predominance is satisfied." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012), *aff'd sub nom.*, *In re Deepwater Horizon*, 739 F.3d 790.

The superiority requirement is met "when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy." *Vaughn*, 627 F. Supp. 2d at 746 (citing *Mullen*, 186 F.3d at 627). Because this is a proposed settlement class, issues relating to the manageability of a class trial are irrelevant. *Id.* (citing *Amchem*, 521 U.S. at 620).

This case meets both the predominance and superiority requirements. The common key issues identified above—whether there was an implied contract, what the terms were to the alleged contract, and whether Dickey's breached that contract—predominate over any individual issues of damages. *Shields v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 37347, at *9 (W.D. La. Jan. 3, 2022) ("Accordingly, when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages.").

Similarly, a class action is the superior way to litigate the proposed class's claims. As the Settling Plaintiffs identify, most potential class members will have too little in damages to pursue their claims against Dickey's individually. Mot.

Appr. Settl. 29-30. This concern is "[t]he policy at the very core of the class action mechanism." *Amchem*, 521 U.S. at 617; *see also Shields*, 2022 WL 37347, at *10 ("The existence of a negative value claim is the 'most compelling rationale for finding superiority.'"). Accordingly, since administrability is not relevant in the context of a settlement class, this reason alone is sufficient to find that this case satisfies the superiority requirement. The District Court should thus find that the proposed class meets both the Rule 23(b)(3) predominance and superiority requirements.

As demonstrated above, the District Court should find that the Settling Plaintiffs and the proposed class members have standing to bring a breach of implied contract claim and that the proposed class meets the requirements for certification set out in Rule 23(a) and (b). Accordingly, the District Court should preliminarily certify the proposed class for settlement purposes.

III.   The District Court should preliminarily approve the proposed settlement because it meets the Rule 23(e) and precedential requirements and will likely be found fair at the final approval stage.

At the preliminary approval stage, the Court must ascertain whether the proposed settlement is likely to be approved as fair, reasonable, and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B). Traditionally, courts in the Fifth Circuit have considered the following six factors, from *Reed v. General Motors Corp.*, in making this determination: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the

proceedings; (4) plaintiffs' probability of success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. 703 F.2d 170, 172 (5th Cir. 1983).

In addition, Rule 23(e)(2), as amended in 2018, provides that, in determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These Rule 23(e)(2) requirements do not "displace any factor" sanctioned by the Fifth Circuit. *Id.* advisory committee's note to 2018 amendments. Indeed, the Rule 23(e)(2) requirements overlap significantly with the *Reed* factors. Accordingly, the Court will consider the Rule 23 requirements as informed by the *Reed* factors.

> A. *The Settling Plaintiffs and their counsel have adequately represented the class.*

22

As noted above in the Rule 23(a) analysis, the District Court should find that the Settling Plaintiffs and their counsel have adequately represented the class. The Settling Plaintiffs have demonstrated a commitment to their involvement in the litigation, and their interests are aligned with the proposed class's members. In addition, the Settling Plaintiffs' counsel is qualified to represent the class. Each of the attorneys representing the Settling Plaintiffs has extensive class action experience, especially in the data breach context. See Mot. Appr. Settl. 15-18. The Objecting Plaintiffs do not dispute that the Settling Plaintiffs and their counsel have adequately represented the class. It is thus apparent that the settling Plaintiffs and their counsel adequately represent the proposed class.

### B.   The proposed settlement was negotiated at arm's length.

Rule 23(e)(2)(B) asks whether the proposed settlement was negotiated at arm's length, thereby implicating the first *Reed* factor—the existence of fraud or collusion in the negotiation. "The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *ODonnell v. Harris County*, 2019 WL 4224040, at *9 (S.D. Tex. Sept. 5, 2019) (citation omitted); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (Fitzwater, C.J.). "The involvement of 'an experienced and well-known' mediator 'is also a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017) (citation omitted); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex.

Apr. 25, 2018) (Lynn, C.J.) (holding that the presence of a neutral mediator "strongly suggests that the settlement was not the result of improper dealings.").

In this case there is no evidence of fraud or collusion. In addition, the proposed settlement is the product of a mediation conducted before an experienced mediator—a retired federal judge with a decade of mediation experience and two decades of experience on the bench. Andersen Decl. ¶ 1 (ECF No. 69-1). Indeed, the mediator has submitted a sworn affidavit stating that "[a]t all times, these negotiations were adversarial, conducted at arm's length, and in good faith . . . [and] the parties reached a hard-fought and honest compromise." *Id.* ¶ 8.

In spite of these facts, the Objecting Plaintiffs contend that "the conduct of the negotiations . . . counsels against approval." Obj. Pls.' Resp. 11. Specifically, the Objecting Plaintiffs complain that they were kept "in the dark regarding all settlement negotiations." *Id.* They also baldly state that the Settling Plaintiffs "appear to have agreed to an inadequate settlement to quickly resolve the actions." *Id.* at 11-12. But the only basis for the Objecting Plaintiffs' objection to the form of the mediation is the mere fact that they were not invited to participate in the mediation.

However, class settlements do not require the support, or even the participation of all counsel. *See, e.g.*, *O'Bryant v. ABC Phones of N.C., Inc.*, 2020 WL 7634780, at *10 (W.D. Tenn. Dec. 22, 2020) ("If concrete evidence were not required, all settlements of competing cases where there are multiple collective

actions would be derailed by accusations of reverse auction."); *Swinton v. Squaretrade, Inc.*, 454 F. Supp. 3d 848, 877 (S.D. Iowa 2020); *Harvey v. Morgan Stanley Smith Barney LLC*, 2019 WL 4462653, at *1 (N.D. Cal. Sept. 5, 2019) ("That a defendant is simply discussing settlement with the plaintiffs in parallel proceedings is insufficient to establish that an impermissible 'reverse auction' has occurred because it 'would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'" (quoting *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008)). Indeed, courts have routinely recognized that the mere allegation of a "reverse auction"—where the defendant picks the most ineffective class plaintiff to settle with in order to limit liability—is unavailing absent "concrete evidence of collusion." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002).

Here, the Objecting Plaintiffs offer no concrete evidence of collusion. And the mere fact that they were not included in the settlement negotiations does not doom the proposed settlement. This absence of evidence, taken together with the sworn affidavit of an experienced and well-known mediator, make it apparent that the proposed settlement is the product of an arm's-length negotiation.

      C.   *The relief offered by the proposed settlement is both procedurally and substantively adequate.*

Rule 23(e)(2)(C) requires the relief granted by the settlement to be adequate, taking into account four considerations: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief . . . , including the method of processing . . . claims; (iii) the terms of any . . . award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The first consideration—the costs risks, and delay of trial and appeal—also implicates four of the *Reed* factors: "(2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery." *Reed*, 703 F.2d at 172.

The Objecting Plaintiffs argue that the proposed settlement implicates the first consideration—the costs risks, and delay of trial and appeal—because, at the point of settlement, "Dickey's had yet to engage in adversarial litigation . . . [and] no formal discovery ha[d] occurred." Obj. Pls.' Resp. 10-11. Specifically, the Objecting Plaintiffs argue that, given the stage of the litigation, they cannot "evaluate whether sufficient discovery was undertaken or whether a trial would be complex." *Id.* at 14.

However, the risks inherent to this litigation are readily apparent. Dickey's has filed motions to dismiss in several of the related cases. Additionally, in the Fifth Circuit, there is little case law on the subject of data breaches. Moreover, the out-of-circuit authority is not universally favorable to the proposed claims. In a different procedural context—such as on summary judgment—the class members

may have trouble proving standing or establishing the elements of a breach of an implied contract. The fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to say nothing of potential appeals. Given the risk inherent at this stage of the litigation, the proposed settlement is more than adequate.

The same can be said for the anticipated litigation's complexity. Already, Dickey's has been sued in at least six civil actions brought throughout the country and there has been litigation regarding whether or not the case should have been centralized. Mot. Appr. Settl. 3. Moreover, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

Finally, no party has indicated to the Court what the range of possible recovery is in this case. However, the Objecting Plaintiffs contend that the proposed settlement is "substantively inadequate" because the amount of funds available per potential class member is "far too low." Obj. Pls.' Resp. 13-14. But when comparing the proposed settlement to other settlements approved in other data breach cases, it becomes clear that the proposed settlement is at least in line with if not better than what any proposed plaintiff could have expected coming into the litigation. Indeed, in the terms of amount of settlement funds per class member, the proposed settlement here surpasses the settlements approved in *In re Target Corp. Customer Data Breach Sec. Litig.*, MDL No. 14–2522 (D. Minn.

27

2017); *In re The Home Depot Inc. Customer Data Sec. Breach Litig*., MDL No. 2583 (N.D. Ga. 2016); *Atkinson v. Minted, Inc.*, 3:20-CV-03869 (N.D. Cal. 2021); and *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1273-84 (11th Cir. 2021). *See* Settl. Pls.' Reply 3-4 (ECF No. 69). Accordingly, the first consideration—the costs, risks, and delay of trial and appeal—favor approval.

The Objecting Plaintiffs do not raise concerns about the second consideration, the proposed method of distributing relief. This consideration requires the Court to consider whether the claims process is "unduly demanding" on potential class members. Fed. R. Civ. P. 23. The Settling Plaintiffs have demonstrated that potential class members need only submit a claim form in order to have their claim considered, and that all claims will be considered by an experienced and recognized national claims administrator. Mot. Appr. Settl. 22; *see* Mot. Appr. Settl. Ex. 1, at 42-45. The second consideration thus also favors approval.

The Objecting Plaintiffs do, however, contest the third consideration, the proposed method of awarding attorneys' fees. The proposed settlement contemplates counsel submitting a separate claim for attorneys' fees after the settlement has been preliminarily approved, and in time for any potential class members to object. Mot. Appr. Settl. 23. Counsel for the Settling Plaintiffs further contend that they will seek an award of up to one-third of the settlement fund, in addition to litigation costs and expenses. *Id.*

28

The Objecting Plaintiffs argue that this method counsels against approval because it "reject[s] the norm" for awarding fees in data breach cases. Obj. Pls.' Mot. 15. Specifically, the Objecting Plaintiffs claim that the proposed method for awarding attorneys' fees is unreasonable because attorneys' fees are typically awarded "separate[ly] and apart from the funds for class members." *Id.* The Objecting Plaintiffs postulate that the proposed method in this case is particularly "unfair and unreasonable" because it reduces the funds available to potential class members. *Id.*

This objection is without merit. Courts in the Fifth Circuit have routinely awarded attorneys' fees as a portion of the total settlement fund. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 645 (5th Cir. 2012) (upholding the award of attorneys' fees through a common fund in a class action); *Klein*, 705 F. Supp. 2d at 673 (stating that "[t]he use of a common fund to pay attorney's fees in class action settlements is well established" and awarding fees as a percentage of the common fund); *In re Heartland*, 851 F. Supp. 2d at 1071 (awarding attorneys' fees as a percentage of the common fund in a data breach case); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1132 (W.D. La. 1997) (stating that in class action settlements "it is long settled that the attorneys . . . are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorneys' fees"). Moreover, the Objecting Plaintiffs, and any other concerned class member, may object to the award of attorneys' fees after the application has been filed. The same can be said for the Objecting Plaintiffs'

concerns regarding notice fees. Obj. Pls.' Resp. 16-17. Therefore, this consideration also advises approval.

The final consideration, any agreement required to be disclosed by Rule 23(e)(3), is not applicable in this case, as no party has identified any such agreement. Accordingly, each of the considerations contained in Rule 23(e)(2)(C) advises that the proposed settlement should be approved.

### D.     *The proposed settlement treats class members equitably.*

Rule 23(e)(2)(D) requires that the proposed settlement treat class members equitably. Fed. R. Civ. P. 23(e)(2)(D). But equitable treatment is not synonymous with equal treatment. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855-56 (1999) ("[A] settlement must seek equity by providing for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves."). "It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class members' claims." *In re Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 948.

Here, the Objecting Plaintiffs only concern is that "the proposed settlement treats Class members differently, without an adequate justification." Obj. Pls.' Resp. 15. Specifically, the Objecting Plaintiffs argue that the Settling Plaintiffs have failed to demonstrate why California class members are able to claim $100 under the settlement while non-California class members can only claim $50. *Id.* at 15-16.

30

The Settling Plaintiffs have adequately demonstrated why this extra recovery for California class members if equitable, if not equal. Namely, class members from California could bring California state law claims which provide for $100-$750 in statutory damages. Settl. Pls.' Reply 4 (citing Cal. Civ. Code § 1798.150(a)(1)(A)). Accordingly, class members from California have a stronger basis for damages than do class members from outside the state—who may only be able to show nominal or incidental damages as a result of Dickey's breach of contract—and so their modestly increased recovery is justified. *See* Mot. Appr. Settl. 30 ("Each individual Class Member's damages are too small to justify individual litigation.").

The same can be said of the procedure for allowing class members to recover out-of-pocket losses. Those class members who can demonstrate that they suffered non-reimbursed, out-of-pocket losses have a stronger claim than other class members. The proposed settlement accounts for this by allowing them to recover up to $5,000 in reimbursement from the settlement fund. Ultimately, the additional strength of both California class members and class members who suffered out-of-pocket losses demands some additional compensation. Indeed, if the proposed settlement did not account for the relative strength of these groups' claims, it would likely not be equitable. Accordingly, this final element of Rule 23(e)(2) also weighs in favor of preliminary approval.

31

>     E.    *The opinions of the Settling Plaintiffs and their counsel*
>            *indicate that the proposed settlement should be approved.*

Lastly, the Court considers the final factor mentioned in *Reed*: the opinions of the Settling Plaintiffs, their attorneys, and absent class members. Critically, in evaluating a proposed settlement, courts should give significant weight to the negotiated resolution of the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Absent fraud or collusion, the court "should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, the Settling Plaintiffs and their proposed class counsel support the settlement. This is especially relevant given the extensive experience that proposed class counsel has in class actions generally and data breach cases specifically. Proposed class counsel represents that they "endorse the [proposed settlement] as fair, reasonable, and adequate." Mot. Appr. Settl. 24-25. In light of their "superior sophistication" and experience in these matters, the Court is justified in placing more weight on the opinion of proposed class counsel than on the opinion of the Objecting Plaintiffs' counsel. *Newby v. Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004). In addition, the Court has already considered and rejected the objections made by the Objecting Plaintiffs to the proposed settlement. This factor thus also weighs in favor of approval.

As discussed above, each of the Rule 23(e)(2) factors, as well as the additional related factors articulated in *Reed*, advise preliminarily approving the

settlement. Accordingly, the District Court should preliminarily approve the proposed settlement.

IV.   <u>The District Court should grant the Settling Plaintiffs' remaining requests and appoint the moving attorneys as co-lead counsel, appoint the Settling Plaintiffs as the representative plaintiffs, appoint Epiq as the settlement administrator, approve the proposed notice plan, and set a final fairness hearing.</u>

As noted above, the undersigned recommends that the District Court preliminarily certify the class for settlement purposes and preliminarily approve the proposed settlement. The Settling Plaintiffs also make additional requests, which the Court now considers in turn.

The Settling Plaintiffs first ask the Court to appoint Ben Barnow, Benjamin F. Johns, and John A. Yanchunis as Co-Lead Class Counsel, and Bruce W. Steckler, Paul D. Stickney, Anthony L. Parkhill, Samantha E. Holbrook, and Brian P. Murray as Additional Class Counsel. The District Court has already made these appointments on an interim basis. *See* Order 5-6 (ECF No. 79). Moreover, as discussed above, proposed class counsel is experienced in class action and data breach litigation and would adequately represent the interests of the class. Accordingly, the District Court should allow proposed class counsel to continue to serve in these roles.

The Settling Plaintiffs next ask the Court to appoint them as representative plaintiffs. As noted above, the Settling Plaintiffs' interests are aligned with the interests of the proposed class, and the Settling Plaintiffs have demonstrated a commitment to adequately representing the proposed class. Accordingly, the

District Court should appoint the Settling Plaintiffs as representative plaintiffs for the proposed class.

The Settling Plaintiffs also ask the Court to appoint Epiq Class Action & Claims Solutions, Inc., as the settlement administrator. The record establishes that Epiq is a sophisticated and experienced settlement administrator. *See generally* Mot. Appr. Settl. Ex. 5 (ECF No. 62-5). Indeed, many courts throughout the country have appointed Epiq to be settlement administrator in large, complex, class action cases. *Id.* ¶¶ 5-9. Additionally, the Objecting Plaintiffs do not object to Epiq's service as settlement administrator. Therefore, the District court should appoint Epiq as settlement administrator.

The District Court should also approve the Settling Plaintiffs' proposed notice plan. The notice plan requires notice to "be sent via email to all potential Settlement Class Members from the list provided by [Dickey's] for whom a facially valid email address is available." Mot. Appr. Settl. Ex. 5 ¶ 19. These potential class members will also get at least one reminder via the email on file with Dickey's. *Id.* For potential class members where an email address is not available, the notice plan provides a "targeted media" strategy, including "internet banner advertising, social media, sponsored search listings, and an informational release." *Id.* ¶ 21. Both the direct emails and the targeted media will direct potential class members to a settlement website, and a toll-free phone number and postal mailing address will also be established to allow potential class members to request more

34

information about the settlement. *Id.* ¶¶ 33-35. The notices themselves have been intentionally designed to be easy to read and understand. *See id.* ¶¶ 36-38.

The Objecting Plaintiffs' only complaint about the proposed notice plan is that it does not provide information "regarding why only a subset [of potential class members] will receive email notice, how many Class members will receive email notice, or how Dickey's determined which email addresses are associated with Class members." Obj. Pls.' Resp. 16. However, the proposed notice plan specifically states that it will provide email notice "to all potential Settlement Class Members from the list provided by [Dickey's] for whom a facially valid email address is available." Mot. Appr. Settl. Ex. 5 ¶ 19. The Court could not reasonably ask for more than email notice for every potential class member where a facially valid email address is available. This, combined with proposed targeted media releases, presents a fair opportunity for notice. Moreover, the fact that Epiq, an administrator with decades of class-action experience, is administering the notice plan also demonstrates that the notice plan should be approved. Therefore, the District Court should approve the proposed notice plan.

Lastly, the Settling Plaintiffs request that the Court set a final fairness hearing for final approval of the proposed settlement. As mentioned above, "if the Court determines that the settlement is fair, the Court [then] directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara*, 214 F.R.D. at 426. Accordingly, the District Court

should set a final fairness hearing. The hearing should only be set after a sufficient notice period. At the final hearing, the Objecting Plaintiffs, and any other concerned class members, may re-raise any of these concerns or any new concerns regarding the fairness of the settlement or certification of the class.

## Recommendation

The Court should GRANT Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 62) in its entirety. Specifically, the Court should preliminarily certify the proposed class, preliminarily approve the proposed settlement as fair, appoint the Settling Plaintiffs as representatives and their counsel as class counsel, appoint Epiq as settlement administrator, approve the proposed notice plan, and set a final fairness hearing.

**SO RECOMMENDED.**

October 14, 2022.

.                                    _____
                                     REBECCA RUTHERFORD
                                     UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).