**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| DEMI KOSTKA, et al., individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>DICKEY'S BARBECUE RESTAURANTS, INC., et al.,<br><br>               Defendants. | No. 3:20-cv-3424-K<br><br>Hon. Ed Kinkeade<br><br>**Consolidated with:**<br><br>Civil Action No. 3:20-cv-3603-K<br>Civil Action No. 3:21-cv-0137-K<br>Civil Action No. 3:21-cv-0769-K |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
<u>CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page Nos.</u>

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

III. THE SETTLEMENT ........................................................................................... 2

   A. The Settlement Class.......................................................................................... 2

   B. Settlement Benefits ........................................................................................... 2

      1. Expense Reimbursement Option........................................................................ 3

      2. Cash Option ....................................................................................................... 3

      3. Credit Services Option ...................................................................................... 3

      4. Business Practices Changes ............................................................................... 3

   C. Notice and Settlement Administration............................................................... 4

   D. Objections and Opt-Outs.................................................................................... 4

   E. Attorneys' Fees, Costs, Expenses, and Service Awards .................................... 5

   F. Release ................................................................................................................ 6

IV.  ARGUMENT ...................................................................................................... 6

   A. Final Approval of the Settlement is Warranted ................................................. 6

      1. Representative Plaintiffs and Co-Lead Class Counsel Have Adequately
         Represented the Class ..................................................................................... 8

      2. The Settlement was the Result of Arms-length Negotiations and Without
         Fraud or Collusion ........................................................................................ 10

      3. The Settlement is Favorable Given the Complexity, Expense, and Likely
         Duration of the Litigation .............................................................................. 12

      4. The Stage of Litigation and the Available Discovery............................................ 14

      5. The Settlement Terms Represent a Highly Favorable Compromise ...................... 14

      6. Co-Lead Class Counsel and Representative Plaintiffs Believe that the
         Settlement is in the Settlement Class's Best Interests ................................... 17

      7. The Effectiveness of the Proposed Method of Distributing Relief to the Class
         Supports Approval of the Settlement.............................................................. 18

      8. The Settlement Treats Settlement Class Members Equitably Relative to
         Each Other ...................................................................................................... 18

   B. The Court Should Certify the Settlement Class................................................ 19

      1. The Requirements of Rule 23(a) Are Satisfied................................................ 20

         i. Numerosity.................................................................................................. 20

         ii. Commonality............................................................................................... 20

i

       iii. Typicality .................................................................................................. 21

       iv. Adequacy of Representation ..................................................................... 22

    2. The Requirements of Rule 23(b)(3) Are Satisfied .................................................. 22

       i.   Common Legal and Factual Questions Predominate in This Litigation............ 23

       ii.  A Class Action is the Superior Means to Adjudicate Representative
           Plaintiffs' Claims ...................................................................................... 24

 C. The Court Should Appoint Undersigned Counsel as Co-Lead Class Counsel
    and Additional Class Counsel and the Representative Plaintiffs as
    the Class Representatives.............................................................................................. 24

V. CONCLUSION.................................................................................................................. 25

# **TABLE OF AUTHORITIES**

Cases                                                                                          Page Nos.

*Ahmad v. Old Republic Nat. Title Ins. Co.*,
   690 F.3d 698 (5th Cir. 2012) ..............................................................23

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)......................................................................20, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..........................................................................23

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ..........................................................12

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ....................................................12, 13, 14

*Baksh v. IvyRehab Network, Inc.*,
   No. 7:20-CV-01845, ECF No. 49 (S.D.N.Y. Jan. 27, 2021) .....................16

*Chacon v. Nebraska Med.*,
   No. 8:21-cv-00070, ECF No. 24 (D. Neb. Sept. 15, 2021).........................16

*Chatelain v. C, L & W PLLC, d/b/a Affordacare Urgent Care Clinics*,
   o. 50742-A (Tex. 42d Dist. Ct. Taylor Cnty. Nov. 5, 2020)......................16

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................6, 8, 12, 17

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
   829 F.3d 370 (5th Cir. 2016) ..............................................................23

*Fox v. Iowa Health Sys.*,
   No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021).................13

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
   446 U.S. 318 (1980)..........................................................................20

*Hammond v. Bank of N.Y. Mellon Corp.*,
   2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)..........................16

*In re Combustion, Inc.*,
   968 F. Supp. 1116 (W.D. La. 1997)...............................................11, 15

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) ..........................................................................15

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ........................................................................20, 22

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013) ............................................................................16

*In re Heartland Payment Sys.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................ *passim*

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  910 F. Supp. 2d 891 (E.D. La. 2012) ..................................................................7

*In re Talbert*,
  347 B.R. 804 (E.D. La. 2005) ............................................................................20

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ............................................................................21

*Jones v. Singing River Health Servs. Found.*,
  865 F.3d 285 (5th Cir. 2017) ............................................................................22

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ......................................................... *passim*

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ........................................................................8, 21

*Liger v. New Orleans Hornets NBA Ltd. P'ship*,
  No. 05-1969, 2009 U.S. Dist. LEXIS 85733 (E.D. La. Aug. 27, 2009) ....................................11

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ............................................................................20

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996) ......................................................................9

*Mowery v. Saint Francis Healthcare Sys.*,
  No. 1:20-cv-00013-SPC, ECF No. 43 (E.D. Mo. Dec. 22, 2020) ............................................15

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ........................................................................20, 24

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) ................................................................................7

*Odonnell v. Harris Cnty.*,
  No. H-16-1414, 2019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sept. 5, 2019) ...............................7

*Parker v. Anderson*,
  667 F.2d 1204 (5th Cir. 1982) ..............................................................................14

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978) ..........................................................................8, 17

*Purdie v. Ace Cash Express, Inc.*,
  No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) .....................7

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ...................................................................... *passim*

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
  188 F.R.D. 433 (W.D. Tex. 1999) ........................................................................14

*Sosna v. Iowa*,
  419 U.S. 393 (1975)..............................................................................................22

*Spegele v. USAA Life Ins. Co.*,
  No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744 (W.D. Tex. Aug. 26, 2021) ................8

*Stott v. Capital Fin. Servs., Inc.*,
  277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................17, 18

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005) ..................................................................................9

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ..................................................................................7

*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ............................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................20, 21

*Welsh v. Navy Fed. Credit Union*,
  No. 5:16-CV-1062-DAE, 2018 U.S. Dist. LEXIS 227456 (W.D. Tex. Aug. 20, 2018) ...........11

<u>Other Authorities</u>

1 *Newberg on Class Actions* § 3.05 (3d ed. 1992)........................................................................20

Fed. R. Civ. P. 23 ................................................................................................ *passim*

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004)............................................................20

## I.      INTRODUCTION

On December 8, 2022, this Court preliminarily approved a proposed class action settlement between Representative Plaintiffs Robert Stroman, Veronica Snyder, Lashawn Parker, Demi Kostka, Vincent Jear, and Latorsha Adams, on behalf of themselves and all other persons similarly situated (collectively, "Representative Plaintiffs"),[1] and Defendants Dickey's Barbecue Restaurants, Inc. and Dickey's Capital Group, Inc. (collectively, "Dickey's" or "Defendants") (and together with Representative Plaintiffs, the "Settling Parties"), conditionally certified a Settlement Class, and authorized the implementation of the Notice Plan described in the Motion for Preliminary Approval of Class Action Settlement. After the dissemination of notice, the Class overwhelmingly supports the settlement, with zero objections and zero timely opt-outs out of approximately 725,000 class members. Representative Plaintiffs now move for final approval.

This Court should grant the Settlement final approval because it is fair, reasonable and adequate, as demonstrated by the reasons stated herein, and because there is no opposition to the settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Representative Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Plaintiffs' Brief in Support (ECF No. 62) filed on August 14, 2021, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith (ECF Nos. 62-1), as well as Plaintiffs' supplemental briefing relating to Plaintiffs' standing (ECF No. 81). Magistrate Judge Rebecca Rutherford

---

[1] All capitalized terms have the same meaning as defined in the Settlement Agreement unless otherwise noted.

granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and held that

Plaintiffs and Settlement Class Members have standing. *See* ECF No. 89 ("The Settling Plaintiffs

have thus demonstrated that, at least at this preliminary procedural stage, both they and all potential

members of the proposed settlement class have properly alleged standing."). Thereafter, the Court

accepted Magistrate Judge Rutherford's findings, conclusions, and recommendations. *See* ECF

No. 90.

## III.    THE SETTLEMENT

### A.    The Settlement Class

In its Preliminary Approval Order, the Court conditionally certified the following class for

settlement purposes:

> All residents of the United States who used a payment card to make a purchase at
> a "Dickey's Barbecue Pit®" restaurant identified in Exhibit B [of the Settlement
> Agreement] between April 23, 2019, and October 29, 2020. The Settlement Class
> specifically excludes: (i) Dickey's and its officers and directors; (ii) all Settlement
> Class Members who timely and validly request to opt-out from the Settlement
> Class; (iii) any Person who has agreed to release his or her claim(s) against
> Dickey's arising out of or related to the Security Incident; and (iv) the Judge
> assigned to evaluate the fairness of this settlement and all court personnel directly
> involved therewith.

Order, ECF No. 95 (hereinafter "Prelim. Approval Order"), ¶ 4; *see also* Settlement Agreement,

ECF No. 62-1 (hereinafter "SA"), ¶ 1.30.

### B.    Settlement Benefits

The Settlement Agreement provides significant monetary relief. The Settlement creates a

$2,350,000 non-reversionary common Qualified Settlement Fund. SA ¶¶ 2.1-2.2. The cost of taxes

and tax-related expenses owed by the fund; notice and administration expenses; attorneys' fees,

costs, and expenses;[2] Service Awards for the Representative Plaintiffs; and compensation to

---

[2] Representative Plaintiffs moved for reimbursement of attorneys' fees, costs, and expenses on
March 23, 2023. ECF No. 97.

2

Settlement Class Members will be paid from the Settlement Fund. *Id.* ¶ 2.3. Settlement Class Members may submit claims for either the Expense Reimbursement Option, Cash Option, or Credit Services Option. *Id.* ¶ 3.1.

### 1.    Expense Reimbursement Option

Settlement Class Members had the option to submit a claim for up to $5,000 of Out-of-Pocket Losses more likely than not attributable to the Security Incident. *Id.* ¶ 3.3(a).

### 2.    Cash Option

Settlement Class Members had the option to submit a claim for a cash payment. *Id.* ¶ 3.4. The exact values of the cash payments will be determined as outlined in SA ¶ 3.6. California Class Members will receive a cash payment that is double the amount of non-California Class Members. *Id.* ¶ 3.4. Which cash payment a Settlement Class Member will receive is determined by the location of the Class Member's primary residence at the time of the Security Incident. *Id.* The difference in value between the cash payment for California Class Members and non-California Class Members is to account for damages under the California Consumer Privacy Act.

### 3.    Credit Services Option

All Settlement Class Members had the option to submit a claim to receive free Credit Monitoring Services. *Id.* ¶ 3.5. The Services consist of 24 months of three-bureau credit monitoring, identity restoration services including professional fraud resolution assistance, and $1,000,000 of identity theft insurance coverage. *Id.* Credit Monitoring Services may be activated within twelve months of the mailing or emailing of the activation code. *Id.*

### 4.    Business Practices Changes

In addition to the benefits described above, the Settlement provides meaningful non-monetary relief that substantially lessens the risk of similar harm to Settlement Class Members in the future. The Settlement requires Dickey's to implement certain specified business practice

3

changes to protect payment card information for at least three years. *Id.* ¶ 3.11. The cost of implementing and maintaining these changes will not be drawn from the Qualified Settlement Fund. *Id.*

### C.  Notice and Settlement Administration

In its Preliminary Approval Order, the Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator") as the Claims Administrator. Prelim. Approval Order ¶ 28. The Settlement Administrator, in accordance with the Court's Preliminary Approval Order, provided notice to the Class in the manner set forth below.

The Claims Administrator sent email notice to Settlement Class Members for whom the Claims Administrator had a valid email address. Declaration of Cameron R. Azari, attached hereto as Exhibit 2 ("Epiq Decl."), ¶ 11. However, this was only a subset of the Settlement Class. The Claims Administrator also implemented a targeted media plan, which utilized internet banner advertising, social media, sponsored search listings, and an informational release in order to reach a broader portion of the Settlement Class. *Id.* ¶ 14. The media notice plan reached approximately 70.7% of adults in the United States who eat at or from casual dining/family restaurants. *Id.* The Claims Administrator created a publicly available website and toll-free hotline devoted to providing relevant information related to the case and settlement and assistance to Class Members. *Id.* ¶¶ 26, 28. The Settlement Administrator had received 117,136 potentially valid claims as of May 12, 2023. *Id.* ¶ 33. There is a possibility that the number of valid claims will change due to denied/cured claims. *See id.*

### D.  Objections and Opt-Outs

The Court-approved Notice Program informed each Settlement Class Member of their right to request exclusion from the Settlement Class and not to be bound by the Settlement if the Settlement Class Member individually signed and submitted written notice of such intent to the

Claims Administrator. *See* SA ¶ 6.1. To be effective, the written notice must have been postmarked by the Claims Deadline. *Id.*

The Notice Program also informed each Settlement Class Member of their right to object to the Settlement by submitting a timely written notice of their objection. *Id.* ¶ 7.1. To be timely, the objection must have been filed with the Clerk of the Court by the Claims Deadline, and served upon the Claims Administrator and Dickey's Counsel. *Id.* Settlement Class Members could either file an objection or Opt-Out, but not both. *Id.* ¶ 7.4.

The deadline to object or opt-out passed on April 22, 2023. This date was provided in the notice sent to Settlement Class Members and is clearly posted on the Settlement Website. There have been zero Opt-Outs and zero Objections. Epiq Decl. ¶ 32.

### E.     Attorneys' Fees, Costs, Expenses, and Service Awards

Co-Lead Class Counsel[3] previously requested approval of (1) an award of $783,333.33 in Attorneys' Fees, representing one-third of the Settlement Fund; (2) reimbursement of $27,508.60 of reasonable costs and expenses; and (3) a service award of $1,500 to each of the six Representative Plaintiffs, for a total of $9,000. *See generally* Mot. for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards, ECF No. 97. As described in the pending fee motion, the requested Service Awards reflect the work the Class Representatives have performed in assisting Co-Lead Class Counsel with this litigation and their dedication to bringing this lawsuit on behalf of the Settlement Class. *See id.* at 19-20.

---

[3] The Court appointed Ben Barnow, of Barnow and Associates, P.C.; Benjamin F. Johns, of Shub & Johns LLC; and John A. Yanchunis, of Morgan & Morgan Complex Litigation Group as Co-Lead Class Counsel in its Preliminary Approval Order. Prelim. Approval Order, ¶ 6.

F.      **Release**

In exchange for the relief provided under the Settlement, Representative Plaintiffs and Settlement Class Members will fully release the Released Persons (as defined in the Settlement Agreement at ¶¶ 1.24, 1.26) from all Released Claims (as defined in the Settlement Agreement at ¶ 1.25). SA ¶ 8.1.

## IV.    ARGUMENT

A.      **Final Approval of the Settlement is Warranted**

A Court may approve a class action settlement when it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). To make that determination, Rule 23(e)(2) provides the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six factors for courts to consider in determining the fairness, reasonableness, and adequacy of

6

a proposed class settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed*, 703 F.2d at 172.

"Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *Odonnell v. Harris Cnty.*, No. H-16-1414, 2019 U.S. Dist. LEXIS 151159, at *25 (S.D. Tex. Sept. 5, 2019); *see, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("[D]istrict courts must determine whether proposed class-action settlements are fair, adequate, and reasonable. To do this in the Fifth Circuit, courts evaluate the six *Reed* factors."); *Newby v. Enron Corp.*, 394 F.3d 296, 308 (5th Cir. 2004) (affirming district court's grant of final approval where district court "faithfully applied" the *Reed* factors).

"When considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003); *see also In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012) ("Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources").

A "proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant

circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, because "compromise is the essence of a settlement," "the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978); *see also Cotton*, 559 F.2d at 1330 ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."). Accordingly, "absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649.

"Nothing has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744, at *8 (W.D. Tex. Aug. 26, 2021). In fact, the overwhelmingly positive response of the Settlement Class Members to the Settlement (zero requests for exclusion, zero objections, and 117,136 potentially valid claims out of a class of approximately 725,000 Settlement Class Members) further underscores that the Settlement is, in fact, fair, reasonable, and adequate. *See id.* The Settlement in these combined actions is fair, reasonable, and adequate under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors, and the Court should finally approve the settlement.

### 1.    Representative Plaintiffs and Co-Lead Class Counsel Have Adequately Represented the Class

Representative Plaintiffs and Co-Lead Class Counsel have provided excellent representation for Settlement Class and satisfy the adequacy of representation factor under Rule 23(e)(2)(A). This factor considers the competence of class counsel, the class representatives' willingness and ability to take an active role in the litigation, and conflicts between the named plaintiffs and class members. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir.

2007). To meet this requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)).

Representative Plaintiffs have no known conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the Class. Further, Co-Lead Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. ECF Nos. 62-2, Ex. 1; 62-3, Ex. A; and 62-4 ¶¶ 7-8; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). Co-Lead Class Counsel also conducted a thorough investigation of the facts both before and during the course of the Litigation. Declaration of Ben Barnow, attached hereto as Exhibit 1 ("Barnow Decl."), ¶ 3. This investigation allowed Co-Lead Class Counsel to better understand the key factual issues at the core of the Litigation in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Having completed their investigation and given the risks of no recovery at all, Co-Lead Class Counsel, together with Representative Plaintiffs, settled this Litigation on a favorable basis to the Class without unduly prolonging it and without the expense and risk of a trial and any subsequent appeals. Accordingly, Representative Plaintiffs and Co-Lead Class Counsel have adequately represented the Settlement Class.

### 2. The Settlement was the Result of Arms-length Negotiations and Without Fraud or Collusion

The Settlement should be approved under Rule 23(e)(2)(B) and the first *Reed* factor. As previously stated, before filing their respective Complaints, Co-Lead Class Counsel investigated the potential claims against Defendants, interviewed potential plaintiffs, and gathered information about the Data Breach and its potential impact on consumers. Barnow Decl. ¶ 3. Thus, Co-Lead Class Counsel's appreciation of the merits of this case prior to settlement, and their extensive experience in litigating other class cases in this area of the law throughout the country, allowed them to engage in vigorous, arms-length negotiations with Defendants. *See In re Heartland Payment Sys.,* 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses" despite the fact that only informal discovery was taken and the case settled at an early stage).

The parties engaged in extensive arm's-length negotiations overseen by experienced mediator and former U.S. District Judge Wayne Andersen. Barnow Decl. ¶ 4. In anticipation of the mediation, Defendants provided information to Co-Lead Class Counsel related to the merits of Representative Plaintiffs' claims and class certification. Barnow Decl. ¶ 4. This informal exchange of information, combined with Co-Lead Class Counsel's individual research, and the significant experience of Co-Lead Class Counsel, allowed counsel to fully evaluate the strengths and weaknesses of Plaintiffs' case, and to conduct informed settlement negotiations. *Id*. On June 30, 2021, the Parties attended a full-day mediation before Judge Andersen. *Id*. ¶ 5. After a full day of arm's-length negotiations, follow-up communications after the mediation, and with the assistance of Judge Andersen, the Parties agreed to the terms of the Settlement Agreement. *Id*. The parties thereafter spent significant time negotiating the specific terms and language of the Settlement

Agreement through numerous phone calls and email exchanges, and finalized the exhibits to the Settlement Agreement. *Id.*

"The involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e); *see also Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary."). "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Klein*, 705 F. Supp. 2d at 651 (quoting *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 U.S. Dist. LEXIS 85733, at *10 (E.D. La. Aug. 27, 2009)). Here, not only is the Settlement the result of arm's-length negotiations as discussed above, but the matter of attorneys' fees was not discussed until after the class benefits were reached. SA ¶ 9.1. Thus, there is no threat of fraud or collusion affecting the fairness of the settlement negotiations. *See In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (citing *In re Combustion, Inc.*, 968 F. Supp. 1116, 1127 (W.D. La. 1997) ("Further, testimony was presented that the matter of attorneys' fees was not negotiated in conjunction with the settlement agreements but left for separate determination by the Court.")).

Given the arm's-length negotiations that resulted in the proposed Settlement and that there is no evidence of fraud or collusion, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2)(B) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(B); *Reed*, 703 F.2d at 172.

### 3. The Settlement is Favorable Given the Complexity, Expense, and Likely Duration of the Litigation

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing *Cotton*, 559 F.2d at 1331). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Here, Defendants repeatedly denied their liability.

By negotiating a Settlement at an early stage of the litigation, the parties ensured that Settlement Class Members will receive the substantial benefits described above while avoiding the risks and potential pitfalls of prolonged litigation. While confident in the strength of Representative Plaintiffs' claims, Co-Lead Class Counsel also recognize the risks inherent in litigation of a complex Data Breach case. *See* Barnow Decl. ¶ 6.

The risks, expense, complexity, and likely duration of further litigation support final approval of the Settlement. Should the case proceed in litigation, Representative Plaintiffs' claims could be dismissed or narrowed at the motion to dismiss stage, summary judgment, at trial, or on a subsequent appeal. Representative Plaintiffs also face the risk that class certification could be denied or that key expert testimony could be excluded. While Representative Plaintiffs strongly believe in the merits of their claims, they recognize each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery for the Class. And even if Representative Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. In contrast, the Settlement provides immediate and substantial benefits to approximately 725,000 Settlement Class Members.

This case is settling in its early stages; if the Settlement is not finally approved, the parties will likely need to litigate through multiple dispositive motions, a motion for class certification, a potential motion to decertify the class, and multiple *Daubert* motions, among other things. That process would likely take years to resolve and involve expensive expert discovery. Yet there is no guarantee lengthy litigation and expensive discovery would lead to greater benefits for Settlement Class Members. Instead, there would be multiple inflection points at which the Settlement Class Members' claims could be narrowed or dismissed. Moreover, the parties will bear the cost of this litigation if it continues. An early resolution, before both sides spend significant sums on litigation costs, is in the best interest of the Settlement Class.

In short, "settling now avoids the risks and burdens of potentially protracted litigation." *Ayers*, 358 F.3d at 369. While Representative Plaintiffs strongly believe in the merits of their case, they also understand the risks of continued litigation. As a recent federal court decision noted:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See* [citation] ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement."

*Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *13 (W.D. Wis. Mar. 4, 2021) (internal citations omitted). Thus, the Settlement should be finally approved under Rule 23(e)(2)(C)(i) and the second *Reed* factor. *See* Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed*, 703 F.2d at 172.

### 4.      The Stage of Litigation and the Available Discovery

Under the third *Reed* factor, the key issue is whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1064 (quoting *Ayers*, 358 F.3d at 369). "A settlement can be approved under this factor even if the parties have not conducted much formal discovery." *Id.* (citations omitted). The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999). "The Court should consider all information which has been available to all parties." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007).

Here, prior to mediation, Defendants shared with Co-Lead Class Counsel key documents, including the forensic report on the Data Breach, and Co-Lead Class Counsel interviewed a Dickey's employee regarding the Data Breach. Drawing on their significant and substantial experience in other data breach class action litigation, Co-Lead Class Counsel were able to determine the Settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. Barnow Decl. ¶ 4. Because the parties "possess ample information with which to evaluate the merits of the competing positions," *Ayers*, 358 F.3d at 369, this factor also favors final approval of the proposed settlement. *See Reed*, 703 F.2d at 172.

### 5.      The Settlement Terms Represent a Highly Favorable Compromise

When evaluating a proposed class action settlement, "the most important factor is the [fourth *Reed* factor,] probability of plaintiffs' success on the merits." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "[T]he Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." (citing *Reed*, 703

14

F.2d at 172 (5th Cir. 1983)). At the same time, a district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed*, 703 F.2d at 172 (internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326-27 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages); *Combustion*, 968 F. Supp. at 1128 ("On the other hand, Plaintiffs will have very serious legal and evidentiary hurdles to meet in order to get their case to the jury.").

Similarly, the fifth *Reed* factor—the range of possible recovery—concerns "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos*, 240 F.R.D. at 290-91. Both of these factors likewise weigh in favor of final approval.

This Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Breach. All Settlement Class Members are eligible to claim 24-months of a credit and identity protection services. SA ¶ 3.5. All Settlement Class Members are eligible to submit a claim for up to $5,000 in reimbursements of Out-of-Pocket losses or they can choose a cash payment, with the value depending on the amount of valid claims submitted. SA ¶¶ 3.3-3.4.

The Settlement benefits exceed the benefits of many settlements reached and approved in comparable data cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC, ECF No. 43 (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out-of-pocket expenses

and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845, ECF No. 49 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Chacon v. Nebraska Med.*, No. 8:21-cv-00070, ECF No. 24 (D. Neb. Sept. 15, 2021) (data breach settlement providing up to $300 in ordinary expense reimbursements including to 6 hours of lost time at $20 per hour; up to $3,000 in extraordinary expense reimbursements; one-year of automatic credit monitoring; data security enhancements); *Chatelain v. C, L & W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42d Dist. Ct. Taylor Cnty. Nov. 5, 2020) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Representative Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Representative Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *5 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

16

Representative Plaintiffs dispute the defenses Defendants would assert—but it is obvious that their success at trial is far from certain. Through the Settlement, Representative Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The inherent uncertainty in litigation—even where, as here, Representative Plaintiffs are confident in their future success—presents a risk to Representative Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. Even assuming success at trial, the case would likely continue with lengthy appeals. The proposed Settlement avoids these uncertainties and provides the Settlement Class with immediate, meaningful, and certain relief. Under the circumstances, Representative Plaintiffs and Co-Lead Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Accordingly, the Settlement should be finally approved under Rule 23(e)(2)(C)(i)() and the fourth and fifth *Reed* factors. *See* Fed. R. Civ. P. 23(e)(2)I(C)(i)); *Reed*, 703 F.2d at 172.

### 6.    Co-Lead Class Counsel and Representative Plaintiffs Believe that the Settlement is in the Settlement Class's Best Interests

All Representative Plaintiffs and Co-Lead Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members, which is an important consideration in any class settlement analysis. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway*, 576 F.2d at 1216); *DeHoyos*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."); *see also Stott v. Capital Fin. Servs., Inc*., 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'") (quoting *Cotton*, 559 F.2d at 1330). Here,

17

Co-Lead Class Counsel are all highly experienced in class action litigation and were well positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. *See* ECF Nos. 62-2, Ex. 1; 62-3, Ex. A; and 62-4 ¶¶ 7-8. They have collectively recovered hundreds of millions of dollars for class members in other litigation, including data breach cases. *See* ECF Nos. 62-2, Ex. 1; 62-3, Ex. A; and 62-4 ¶¶ 7-8. Accordingly, the sixth *Reed* factor further supports approval of the proposed Settlement. *See Reed*, 703 F.2d at 172; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. at 346 ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

### 7. The Effectiveness of the Proposed Method of Distributing Relief to the Class Supports Approval of the Settlement

Subject to Court approval, the Net Settlement Fund will be distributed pursuant to a proposed distribution formula set out in the Settlement Agreement. SA ¶ 3.6. No residual funds will revert to Defendants. *Id*. ¶ 3.10. Settlement Class Members were able to select digital payments or to receive the payments by check. *Id*. ¶ 10.2. All payments will be made no later than 60 days after the judgment becomes final. *Id*. Given the simplified process for paying each Class Member and the fact that no funds will revert to Defendants, this factor weighs in favor of approval under Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 8. The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The final factor, Rule 23(e)(2)(D), looks at whether Settlement Class Members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement provided for a notice plan that is designed to reach as many Settlement Class Members as possible and provided Settlement Class Members with direct mail notice of the Settlement. *See* Section III(C), *supra*. It also informed Settlement Class Members of their right to object to, or opt out of, the Settlement. *Id.* All

Settlement Class Members were eligible to make a claim for the same amount of Out-of-Pocket expense reimbursements. SA ¶ 3.3.  Moreover, all Settlement Class Members could elect to receive a code for enrolling in 24 months of credit monitoring and identity protection services. SA ¶ 3.5. While California Class Members are eligible for a larger cash payment than non-California Class Members, this enhanced payment was only available because they are eligible for additional statutory benefits that cover only residents of California. And, while Representative Plaintiffs each seek a $1,500 award for their services on behalf of the Class, this award is less than one-half of the amount that any given Class Member can claim in reimbursements, and is justified by the benefits brought to the Class by the work of the Representative Plaintiffs. Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

Each factor identified under Rule 23(e)(2) and as required by the Fifth Circuit in *Reed* is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $2,350,000.00 recovery is a significant and meaningful result, designed to meet the types of repercussions sustained by Settlement Class Members following a data breach. It could not have been achieved without full commitment by Representative Plaintiffs and Co-Lead Class Counsel. Representative Plaintiffs and Co-Lead Class Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, that it meets each of the Rule 23(e)(2) and *Reed* factors, and final approval should be granted.

### B.      The Court Should Certify the Settlement Class

The Court previously concluded that it was appropriate to preliminarily certify the Settlement Class for settlement purposes only. See ECF No. 95, ¶¶ 4-5. Since preliminary approval, nothing has materially changed that should cause the Court not to finally certify this Settlement Class. Because the Settlement Class meets the requirements for certification under Rule

23(b)(3), the Court should approve the Settlement Class for purposes of judgment on the Settlement. The Settlement Class also meets the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). The prerequisites for class certification under Rule 23(a) are numerosity, commonality, typicality, and adequacy—each of which is satisfied here.

### 1.    The Requirements of Rule 23(a) Are Satisfied

#### i.    Numerosity

Rule 23 first requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no specific threshold that must be surpassed in order to satisfy the numerosity requirement; rather, the determination "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). That said, a showing that the class consists of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992)); *see In re Talbert,* 347 B.R. 804, 808-809 (E.D. La. 2005) (finding numerosity requirement met when class potentially consisted of 88 members).

Here, the numerosity requirement is easily met. The Settlement Class consists of approximately 725,000 members.

#### ii.    Commonality

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 368 (2011) (citing Fed. R. Civ. P. 23). "The principal requirement of [*Dukes*] is merely a single common contention that enables the class action 'to generate common *answers* apt to drive the resolution of the litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (citing *M.D. ex rel. Stukenberg v.*

*Perry,* 675 F.3d 832, 840 (5th Cir. 2012)) (emphasis in original). "These 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct." *Id.* Regardless, "a single common question will do." *Id.* (citing *Dukes*, 564 U.S. at 359).

The commonality requirement is easily satisfied here. All Settlement Class Members' claims turn on whether Defendants' security was adequate to safeguard Settlement Class Members' PII. Thus, common questions include, *inter alia*: (i) whether Dickey's violated common law duties, prohibitions on unfair and deceptive trade practices, other legal obligations, and industry standard practices in causing the Data Breach; (ii) whether Dickey's failed to properly secure and protect Settlement Class Members' Personal Information, and (iii) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. This is sufficient to demonstrate commonality.

### iii.   Typicality

Rule 23(a)(3) "requires that the named representatives' claims be typical of those of the class." *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d at 314. Here, Representative Plaintiffs' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct and are premised on the same legal theory. Representative Plaintiffs had PII that was stored on Defendants' systems and that was compromised in the Data Breach, and so they suffered the same injury, were harmed by the same inadequate data security, and seek to assert the same underlying claims as the rest of the Class. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

21

### iv. Adequacy of Representation

The Court should also easily conclude that "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This requirement is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 294 (5th Cir. 2017). The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *In re Deepwater Horizon*, 739 F.3d at 813 n.99 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Both prongs are satisfied here.

Representative Plaintiffs adequately represent the Settlement Class, as they have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, Co-Lead Class Counsel are highly experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See* ECF Nos. 62-2, Ex. 1; 62-3, Ex. A; and 62-4 ¶¶ 7-8; s*ee also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied where class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases").

### 2. The Requirements of Rule 23(b)(3) Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. Representative Plaintiffs seek class certification under Rule 23(b)(3), which requires "that the

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### i.    Common Legal and Factual Questions Predominate in This Litigation

Common legal and factual questions predominate in this Litigation relating to the Data Incident and related allegations. The predominance inquiry under Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012). Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of the claim is susceptible to classwide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Rather, it does require that common questions predominate over any questions affecting only individual class members. *Id.* "A common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (citations and quotations omitted).

Representative Plaintiffs assert claims for negligence, negligence per se, breach of contract, and violations of state statutes prohibiting unfair and deceptive trade practices. The key questions in this litigation are whether Dickey's failed to take reasonable and adequate measures to prevent the Data Breach, detect the Data Breach once initiated, remedy and mitigate the effects of the Data Breach, and to timely notify affected persons of the Data Breach in its aftermath. These questions predominate over any individual issues. The predominance requirement is satisfied.

        **ii.**     **A Class Action is the Superior Means to Adjudicate Representative Plaintiffs' Claims**

The Court should find that the class action is the superior means of adjudication under Rule 23(b)(3). Each of the Rule 23(b)(3) factors, below, weigh in favor of finding superiority:

        (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

        (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

        (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        (D) the likely difficulties in managing a class action.

All of these factors favor class treatment in this case. The value of each Settlement Class Member's claim is relatively so much smaller than the cost it would take to litigate individual actions. Thus, Settlement Class Members would not individually be able seek redress in this matter in an economically feasible manner. It is desirable to concentrate the litigation of the claims into the present forum in view of the scale of the class under Rule 23(b)(3)(C). With approximately 725,000 class members, a class action would be superior to individual adjudication. *See Mullen*, 186 F.3d at 627 (comparing a class that would consist of hundreds, instead of millions, of members).

Therefore, because the proposed Class satisfies the requirements for class certification, the Court should certify the Settlement Class for purposes of judgment on the Settlement.

**C.**     **The Court Should Appoint Undersigned Counsel as Co-Lead Class Counsel and Additional Class Counsel and the Representative Plaintiffs as the Class Representatives**

The Court preliminarily appointed Ben Barnow of Barnow and Associates, P.C.; Benjamin F. Johns of Shub & Johns LLC; and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Co-Lead Class Counsel. ECF No. 95 at ¶ 6. The Court also appointed Bruce W. Steckler

and Paul D. Stickney, Steckler Wayne Cochran PLLC, Anthony L. Parkhill, Barnow and Associates, P.C.; Samantha E. Holbrook, Shub & Johns LLC; and Brian P. Murray, Glancy Prongay & Murray LLP as Additional Class Counsel. *Id.* Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Representative Plaintiffs request that these counsel be appointed Co-Lead Class Counsel and Additional Class Counsel, respectively, for the Settlement Class under Rule 23(g)(1). In addition, because Plaintiffs Robert Stroman, Veronica Snyder, Lashawn Parker, Demi Kostka, Vincent Jear, and Latorsha Adams have diligently and successfully fulfilled their responsibilities as the representatives of the class as initially certified and the proposed Settlement Class, the Court should appoint them as the Class Representatives.

## V.     CONCLUSION

For the foregoing reasons, Representative Plaintiffs respectfully request that the Court enter an Order (1) finally certifying the Settlement Class for settlement purposes; (2) granting final approval of the Settlement; (3) finding that Notice has been conducted in accordance with the Court-approved notice plan and due process; (4) granting Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards; and (5) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Defendants.


Date: May 16, 2023                           */s/ Ben Barnow*
                                             Ben Barnow (*pro hac vice*)
                                             Anthony L. Parkhill (*pro hac vice*)
                                             **BARNOW AND ASSOCIATES,
                                             P.C.**
                                             205 W. Randolph St., Suite 1630
                                             Chicago, IL 60606
                                             Tel: (312) 621-2000
                                             Fax: (312) 641-5504

b.barnow@barnowlaw.com
apakhill@barnowlaw.com

John A. Yanchunis
Texas Bar No. 22121300
**MORGAN & MORGAN
COMPLEX
LITIGATION GROUP**
201 N. Franklin Group, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Fax: (813) 223-5405
jyanchunis@forthepeople.com

Benjamin F. Johns
Samantha E. Holbrook
**Shub & Johns LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Interim Co-Lead Class Counsel*

Cory S. Fein (State Bar No.
06879450)
**CORY FEIN LAW FIRM**
712 Main Street, Suite 800
Houston, TX 77002
Tel.: (281) 254-7717
Fax: (530) 748-0601
cory@corfeinlaw.com

*Interim Liaison Counsel*

Bruce W. Steckler
State Bar No. 00785039
Paul D. Stickney (Of Counsel)
State Bar No. 00789924
Austin P. Smith
State Bar No. 24102506
**Steckler Wayne Cochran
Cherry, PLLC**

26

12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Tel: 972-387-4040
bruce@swclaw.com
judgestick@gmail.com
austin@swclaw.com

*Additional Interim Class Counsel*

## CERTIFICATE OF CONFERENCE

I hereby certify, pursuant to Northern District of Texas LR 7.1(b), that counsel for Plaintiffs has conferred with counsel for Defendants and Defendants do not oppose this motion.

*/s/ Ben Barnow*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2023, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the Northern District of Texas via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

*/s/ Ben Barnow*